## Whitehead *against* Bank of Pittsburgh.

After the dissolution of a partnership, one of the partners cannot bind the others by using the name of the firm; but if by the agreement and terms of the dissolution, it be provided, that the firm name shall be used in winding up the business, and for the renewal of any notes given in banks, then all the partners will be bound by the use of it in a transaction connected with their business.

In an action against partners, upon a note signed with the name of the firm after it was dissolved, the one who signed being willing to testify, and having been first released by the plaintiff from any other action on the note, is a competent witness.

ERROR to the District Court of *Allegheny* county.

The Bank of Pittsburgh against Thomas T. Whitehead, Charles Ihmsen, Christian Ihmsen, and William Philips. This cause was tried before Dallas, President; it was an action brought by the Bank of Pittsburgh against the present plaintiffs in error, on a promissory note executed by Thomas T. Whitehead after the dissolution of the firm, but for the purpose of meeting, as was alleged, engagements of said firm.

In the progress of the trial, Thomas T. Whitehead was offered and received as a witness on the part of the bank, after a release to him.

The facts of the case are fully stated in the opinion of the court.

The errors assigned were:

1. That the court erred in their instruction to the jury, as to the authority of Whitehead to bind the members of the firm by a note made after the dissolution.

2. In admitting Whitehead, one of the defendants, as a witness for the plaintiff.

*Biddle*, for plaintiff in error. The question is, can a new cause of action, not existing during the partnership, be originated by one of the partners after the dissolution? The opinion in *Desauque's Case* (5 *Whart.* 530), is merely on the extent of the implied power of the partners after dissolution. But here the case turns upon the construction of the express power given by the terms of the dissolution and advertisement of 1838. The new firm, on which the power was then conferred, embraced Christian Ihmsen, a careful man, and the only solid one; but before the original note issued, Christian Ihmsen had disappeared from the firm in consequence of the agreement of the 1st of January 1839. These articles restrict the powers to " renewals of any notes given in

[Whitehead v. Bank of Pittsburgh.]

banks by the late firm of Whitehead, Ihmsens & Philips." It is not pretended this note was one of that description. The evidence showed that the bank knew of the withdrawal of Ihmsen. Grant for the argument that one partner might act under the power contained in the agreement, yet was not that power revoked by the change? But there is no such power in the dissolution as justifies one of the partners in originating a new cause of action. It is clearly settled that continuing partners have not such power, though authorized to settle partnership affairs. *Chit. on Con.* 210; *Chit. on Bills* 61; 3 *Kent Com.* 62; 1 *Hen. Blac.* 155; 17 *Serg. & Rawle* 129; 1 *Penn. Rep.* 138; 1 *Peters* 373; 2 *Johns.* 303; 6 *Johns.* 237; 4 *Johns.* 224; 3 *Vern.* 88; 1 *M'Cord* 16.

Whitehead was not a competent witness: he was interested in associating other defendants in his liability, that he might thus be relieved from a part of his responsibility. 3 *Serg. & Rawle* 406; 3 *Cow. Phil. Ev.* 1521; *Dudley* 119.

*Dunlop,* for defendant in error, argued that the principle contended for by the plaintiff below was clearly settled by the case in 5 *Whart.* 530. If a partner after dissolution may borrow money and apply it fairly to the liability of the firm, as is held in that case, it is difficult to perceive any principle that forbids his giving a promissory note in the name of the firm for it. In this case the note was fairly given, and the proceeds properly applied.

There is no point of view in which Whitehead was interested, after he was released by the plaintiff from any other action than this. There could have been no recovery against him alone, and his testimony went to charge him with a liability to pay at least one-third of the debt.

The opinion of the Court was delivered by

HUSTON, J.—The Pittsburgh Bank was the plaintiff, and sued upon the following note.

                              "*Pittsburgh,* 11*th May* 1839.
$600.
    "Sixty days after date we promise to pay to the order of R. C. Greer, six hundred dollars, without defalcation, for value received.

                              "WHITEHEAD, IHMSENS & PHILIPS.
        Endorsed,
    "R. C. GREER,
        WHITEHEAD, SPROUL & Co."

1. It was admitted that the above note was written by Thomas T. Whitehead, formerly of the firm of Whitehead, Ihmsens & Philips.

2. It was admitted that prior to the date of the note there had been a firm of Whitehead, Ihmsens and Philips, composed of the defendants in this suit.

II. — P *

[Whitehead v. Bank of Pittsburgh.]

3. It was admitted that the endorsement Whitehead, Sproul & Co., and the signature Whitehead, Ihmsens & Philips, were written by Thomas T. Whitehead.

The defence was, that on the 13th December, before the date of the note, the firm of Whitehead, Ihmsens & Philips was dissolved, and that this was known to the cashier, and at least some of the directors of the bank. There was a good deal of testimony, and some exception to evidence, but as the court intimated that the jury should take it there was actual notice, and the cause was argued on other grounds, I omit this part of the case.

Notice of the dissolution was published 13th December 1838, in the "Advocate," a daily paper in Pittsburgh, taken at the bank, and other evidence of their knowledge. The notice was as follows:

" Notice.—The partnership heretofore existing between the subscribers in the manufacturing of flint and black glass, was dissolved on the 16th of October, by limitation, and the retiring of William Philips. The business will be closed by the remaining partners, *for which purpose the name of the firm will be continued.*"
" *December 13th* 1838.

Signed,           " Thomas T. Whitehead,
Christian Ihmsen,
Charles Ihmsen,
William Philips."

The cause depended much in the Common Pleas, and was argued here on the effect of the last part of this notice of dissolution. It was contended for the defendant, Christian Ihmsen, who alone resisted the plaintiff's recovery, that the closing clause, " for which purpose the name of the firm is continued," had no operation, and gave no authority, more than the remaining partners would have had, if those words had not been inserted. It will be proper, however, to notice some occurrences posterior to 13th December 1838.

Henry Sproul at some time came into the firm, either at the time or after Mr Philips retired. On 1st January 1839, Christian Ihmsen sold his interest in the concern to Thomas T. Whitehead and Henry Sproul. The articles of sale are long and specific. The purchasers were to give their notes or bonds for above $18,000. This seems to be increased or diminished as a final settlement of the affairs of the late firm of Whitehead, Ihmsens & Philips should turn out. The new firm of Whitehead, Sproul & Co. to pay all debts, including those to Mr Philips for his share.

The clause relied on by both parties followed.

" It is agreed by the parties to these presents, that the name of the firm, Whitehead, Ihmsens & Philips, is to be used for the renewal of any notes given in bank by the late firm of Whitehead,

Ihmsens and Philips. And it is also understood that Frederick Lorentz will continue his endorsements on the notes of Whitehead, Ihmsens & Philips, to the amount that he is now on, subject to the reductions required by the banks, and that he will endorse drafts drawn by Whitehead, Sproul & Co. in his favour, to meet any reductions in the notes aforesaid of Whitehead, Ihmsens & Philips; and that the agreement of said Lorentz will be procured so to do, before the taking effect of these premises."

Christian Ihmsen left the city without speaking to Lorentz, and Lorentz as I understand it, refused to endorse ever after.

It has been strongly contended, that by the clause of the agreement last cited, Whitehead and Sproul (for they and Christian Ihmsen are the only parties to this agreement) are expressly limited in the use of the name of Whitehead, Ihmsens and Philips, to the renewal of notes given by that firm, and in some bank or banks. Admit that this last agreement would limit the use of this name to that purpose alone. The agreement assumes that the remaining partners, of whom Christian Ihmsen until this last agreement was one, had power to use the name of the old firm. How did they obtain that power? By agreement when Mr Philips retired. What was the evidence that they had such authority? The published terms of the dissolution. That publication gave the authority in more general terms. " The business will be closed by the remaining partners, for which purpose the name of the firm will be continued." Now Mr Philips thought, and Charles Ihmsen thought, and they think yet, as it seems, that the remaining partners had a right to use the name of the old firm for the purpose of closing the concern. The business of a court and jury is to ascertain the meaning and intention of the parties in making an agreement, and to carry that into effect, if it is consistent with law. I know of no better mode of ascertaining this meaning, than is shown if all parties acted on a particular meaning. Some observations from respectable sources, where the parties acted on a mistake of the quantity of estate given by certain words, which words, in law, have acquired a fixed and certain meaning, are not, in my opinion, applicable to agreements relating to the ordinary business of life, where no words of legal technical force are used. Christian Ihmsen himself understood that the remaining partners had power to use the name of the old firm, or it was absurd to make any agreement about the use of it. His counsel says, by this contract he limited Whitehead and Sproul in the use of it; but what did the bank know of this agreement of the 1st of January 1839? There was evidence sufficient to justify the court in, to a degree, assuming that the bank's officers knew of the dissolution, and saw and read the advertisement; but nothing to induce even a suspicion that any one of them ever saw the agreement of sale of Ihmsen to Whitehead and Sproul.

[Whitehead v. Bank of Pittsburgh.]

The bank, then, had a right to understand the notice of dissolution as its words purport, and as the parties to it understood it. No new arrangement between the remaining partners, of which the bank had no knowledge, could affect it. I have looked in vain for any evidence that any officer of the bank ever saw this agreement of the 1st of January 1839, or had any notice that it in any way affected the terms of the dissolution of the first partnership.

It was, however, said, and many authorities cited to prove, that after the dissolution of a partnership, no one of the partners can use the partnership name so as to affect the other partners. This, as a general rule was not denied. I do not contest it. The cases cited, however, do not exclude the possibility of it, if done by the agreement of the retiring partners. While in partnership, each can use the name of the firm. After acting together, and after experience of each other's honesty and capacity for business, it is usual to select one or more to settle the business; and as much business is done on credit, and it is often not possible to collect, and, of course, to pay, it is not strange that he who is to settle the affairs should have given to him the authority to use the name of the firm, where inconvenience and loss to all concerned would occur, if no such authority were given. If given, no more risk is run than before dissolution; but if the risk is increased by giving this power to him, or to them who are to settle the affairs of the company, let them refuse to give it—not give it in the plainest terms, and then refuse to be bound by it. No case was cited, and it is believed none can be, which says such authority may not be given; or that if given the firm are not bound by what is done in pursuance of it. I have found one case, which is as follows. A firm, on dissolution, gave one partner power to use the name of the firm in prosecuting all suits, brought or to be brought. This partner signed the name of the firm to a note for the sixpences under the Lord's Act, (I state the case as I find it, though I do not know what Act or what sixpences), which was necessary in prosecuting the suit, and it was held the partners were all bound. *Burton* v. *Isset*, (5 *Barn. & Ald.* 207). This case goes farther than was done here. But it is good sense as well as law. If a man is empowered to do, and bound to do any thing, he must have all the power necessary to do it, and to do it as was expected and required of him. The same principle was applied by this court in the case of *Davis & Desauque*, (5 *Whart.* 530).

Was the money raised on the note of $1000, of which the one in suit is a renewal, applied to pay a debt or debts of the firm of Whitehead, Ihmsens & Philips? The proof that it was so, was full and explicit. The truth of the testimony on this point was submitted to the jury, and their verdict finds it true.

The cases cited are not denied. In 1 *H. Bl.* 155, the court at first directed a recovery on the money count as having been money advanced for the use of the old firm; but it appeared the bill

had been once paid but not taken up, and on some further deal-
ings was lifted and sued on.

In 2 *Johns.* 303, the note was given for the debt of one partner,
and by that partner to a man who knew it was not a partnership
debt, and could not have been recovered though the firm had still
continued.   All that was said about the power of one partner to
bind the firm after dissolution, was true as a general position, but
not necessary in that case.

In 4 *Johns.* 224, in stating the case, and the dissolution and
power to one to settle the business, the reporter adds: "but no
power *to use the name of the firm*, either in drawing or discount-
ing bills, to wind up the business." In short, none of the cases go
further than to state and enforce the general position that one part-
ner after dissolution cannot draw or endorse in the name of the
firm.   No case has said he may not do so, if express authority to
do so is given.   And one case, above cited, shows he may do so
if he cannot exercise the authority given without using the name
of the firm; and 3 *Kent* 50, cites the above case from 5 *B. & Ald.*
207, as law.   I have found the following cases.

Although partners have agreed to dissolve, and one retires, and
the dissolution has been published in the Gazette, yet, if the name
of the firm is left over the door, the retiring partner is bound by
an acceptance in the name of the firm, written by another part-
ner after the dissolution. 2 *Stark. N. P.* 290.

There is a case in 2 *Campbell* 617, which is so far contrary to
this, that Lord Ellenborough decided such an acceptance did not
bind the retiring partner, though the name continued over the
door, if he to whom the acceptance was given had actual know-
ledge of the dissolution.   A partner who has retired, but agreed
that the name of the firm shall continue for a certain time, is lia-
ble on a bill drawn by the continuing partners, within the time,
though the bill was given to one who had actual notice of the dis-
solution. 2 *Stark.* 120.

Brown, to whom the note was given, knew of the dissolution,
(having been told of it by the retiring partner,) but he knew that
the name of the firm was to be continued, and that thus all would be
responsible, and on that he acted, and recovered. 2 *Chit. Rep.* 120.

This last case was affirmed in bank.

*Gow* 274, after a discussion of the liability of partners after
dissolution, says: Partners, after a dissolution and full notice
of their secession from the concern, will not be liable even to a
person who was ignorant of the fact of dissolution, unless it ap-
pear that they had subsequently interfered in the management of
the business, or *allowed their names to be used, or in any way
authorized the parties acting in the concern to use their names or
credit.*

It thus appears the question is not new, that allowing re-
maining partners to use the name of the old firm does continue

the liability of all members of the old firm. It will not do to say, this means to sue and give receipts in the name of the firm; that could always be done. The cases cited are of signing notes and drawing and accepting bills.

But it is said, borrowing money is creating a new debt, and not closing the old concern. Without undertaking to say whether it is sometimes necessary for the interest of all concerned to borrow for a few days, it is clear, borrowing to pay an urgent creditor, is not creating a new debt, if he is paid with the money borrowed. The debt will be due to a different person.

I may suppose these people knew better what might be necessary in closing this old concern than I do. When Christian Ihmsen went out, among other things it was understood that Frederick Lorentz would endorse drafts drawn by Whitehead, Sproul & Co. in his favour, to meet any reductions on the notes of Whitehead, Ihmsens and Philips. Now, to me this looks very like providing for the possible case of the reductions required by the banks being so large that they could not be met without drawing drafts which would require an acceptor, which is very much like borrowing money. I know this was in the agreement of 1st January 1839, of which we do not know that the bank had any knowledge, but it may be presumed to have been as well known at the dissolution published 13th December, what might be required, as it was on 1st January; and the continuance of the name of the firm agreed to for this very purpose. No other reason for its continuance, than to enable the continuing partners to sign that name to notes, bills, and acceptances, has been given. I know of no other which can be given.

The Bank of Pittsburgh was applied to for this money expressly to enable Whitehead, Sproul & Co. to settle the business of Whitehead, Ihmsens & Philips, and it was distinctly proved it was applied to that purpose.

The only remaining error assigned is in admitting Thomas T. Whitehead, who was called by the plaintiff below, to give evidence. He might have refused, being one of the defendants. His admission was opposed, and the bank gave him the following release.

"Know all men by these presents, that the Bank of Pittsburgh hereby covenants with Thomas T. Whitehead not to demand from him the amount of a note for six hundred dollars, drawn in the name of Whitehead, Ihmsens & Philips, and endorsed by R. C. Greer, or any part thereof, by any other suit than the one now pending against the said Thomas, or as a member of any other firm or company, except as a member of the firm of Whitehead, Ihmsens and Philips, and in the action now pending against the said firm, on the said note, in the District Court of Allegheny county."

This was under the seal of the corporation, affixed in pursuance

of a resolution of the Board of Directors, and had also the signature of the cashier. The court then admitted the witness. Being freed from any other responsibility, he was called to swear against his own interest,—to make himself liable with others in this suit. If no recovery against him here, there never could have been one against him.

The case of *Purviance* v. *Dryden*, (3 *Serg. & Rawle* 406), was cited as applying to this point, but here the partnership of Whitehead, Ihmsens and Philips was admitted, and the dissolution; and the terms of its dissolution were produced by the defendant. In addition, the release given by the Bank, makes an entire difference as to the situation and interest of the witness.

Let it be distinctly understood, that we hold the general rule, that after a dissolution, known and proved to be known, the retiring partner cannot be bound by the use of the name of the firm. This is the general rule, to which there may be exceptions, one of which is, that he has agreed that the remaining partners may continue to use the name of the firm as it stood before the dissolution.

Judgment affirmed.