# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

MARCH TERM, 1857, AT ST. LOUIS.

[CONTINUED FROM VOL. XXIV.]

———————

PATTERSON *et al.*, Plaintiffs in Error, v. CAMDEN, Defendant in Error.

1. In determining the meaning of a written instrument, the acts of the parties thereto are entitled to great weight.
2. Where a partnership is dissolved and a new partnership formed, the debts of the old firm may, by consent of all parties—the creditors, the old firm and the new—be transferred to the new firm, and the old firm may be discharged.

### *Error to St. Louis Circuit Court.*

This was an action of assumpsit, commenced in the St. Louis Circuit Court in the year 1841. The declaration consisted of six counts, four of which charged the defendant, John B. Camden, as drawer of two bills of exchange, of which the following are copies:

"Exchange for $1639 35.    Philadelphia, 24th October, 1839.    Six months after date of this first of exchange, second

2—VOL. XXV.

of the same tenor and date unpaid, pay to the order of Robert Patterson & Co., sixteen hundred and thirty-nine thirty-five hundredths dollars, value received, and charge the same to account of your obedient servants. [Signed] T. T. Leavel & Co., in liquidation. To Messrs. T. T. & H. Leavel, New Orleans."

"Accepted, payable at the counting-house of Buckner, Stanton & Co., New Orleans. [Signed] T. T. & H. Leavel."

"Exchange for $1706 05. Philadelphia, 28th January, 1840. Thirty-five days after date of this first of exchange, second of the same tenor and date unpaid, pay to the order of Robert Patterson & Co., seventeen hundred and six five-hundredths dollars, value received, and charge the same to account of [Signed] T. T. Leavel & Co., in liquidation. To Messrs. T. T. & H. Leavel, New Orleans."

"Accepted, payable at the banking-house of Forsyth & Limerick, New Orleans. [Signed] T. T. & H. Leavel."

There were also counts for goods sold, money had and received, &c., and upon an account stated. To the first four counts the defendant pleaded the general issue, set-off, and payment; he also pleaded that the sums sought to be recovered were for articles in a store account, and that the cause of action did not accrue within two years before the commencement of the suit.

At the trial evidence was given proving and tending to prove that prior to the 5th day of February, 1839, a firm existed in Manchester (afterwards called Yazoo city), in the state of Mississippi, composed of Thomas T. Leavel, John B. Camden, and Marbel Camden, under the name and style of T. T. Leavel & Co.; that Leavel was the acting partner, the Camdens residing in St. Louis; that during the period of the partnership the firm of T. T. Leavel & Co. had large transactions with the plaintiffs; that in January, 1839, the firm of T. T. Leavel & Co. ordered of plaintiffs brandy to the amount of $1468 75, which was sent them, and the expenses of porterage and insurance on it paid by plaintiffs, amounting to $44 50. On the 5th of February, 1839, the partner-

ship of T. T. Leavel & Co. was dissolved, T. T. Leavel having bought out the interest of the Camdens for $11,000, and the following notice was published in the paper published in Manchester, and also in the United States Gazette at Philadelphia: "Notice.—The partnership heretofore existing between the undersigned, under the name and style of T. T. Leavel & Co., is this day dissolved by mutual consent. Those having claims against the late firm will present them to T. T. & H. Leavel for settlement. Those indebted to them will make payment to the same. The name of the old firm may be used in the settlement of the old business. Manchester, Mississippi, February 5, 1839. [Signed] T. T. Leavel, Marbel Camden, John B. Camden, by his attorney, Marbel Camden." That immediately upon the dissolution of the firm of T. T. Leavel & Co. a new firm was formed of T. T. Leavel and his brother, under the style of T. T. & H. Leavel; that T. T. Leavel went to Philadelphia in March, 1839, when he met John B. Camden; and that while there, with the knowledge and approbation of said Camden, he drew drafts in settlement of the liabilities of the firm of T. T. Leavel & Co. to plaintiffs, in the name of "T. T. Leavel & Co. in liquidation;" that this was done in order to give the old firm time. Plaintiffs introduced evidence tending to prove that the draft for $1636 35 was given for the brandy bought before the dissolution on the 15th of January, 1839, with interest and exchange added; and that the draft for $1706 65 was given in settlement of another draft of $1500, dated at Philadelphia March 8, 1839, and drawn by T. T. Leavel on T. T. & H. Leavel, in favor of J. B. and M. Camden, and endorsed by them, which was at its date delivered by T. T. Leavel and J. B. Camden to plaintiff, Robert Patterson, he at the time paying them the amount of the same in cash for the purpose of liquidating other liabilities of the firm of T. T. Leavel & Co. to other persons, which draft Robert Patterson at once transferred to plaintiffs; that T. T. Leavel had drawn in the name of "T. T. Leavel & Co., in liquidation," other drafts as well as the ones in suit, with the knowledge of defendant, and

without objection; as also that due notice was given of the presentment of the drafts and the non-payment thereof. Defendant introduced evidence tending to prove that Thomas T. Leavel, in 1838, visited St. Louis for the purpose of buying out the interest of the Camdens in the firm of T. T. Leavel & Co., and offered therefor $15,000; that the firm of T. T. Leavel & Co. did not owe the plaintiff any thing; also various receipts of plaintiffs for money paid by T. T. Leavel & Co.; also a memorandum signed by T. T. Leavel, dated at Philadelphia, March 19, 1839, of endorsements by J. B. and M. Camden, of various drafts of T. T. & H. Leavel, which were given to settle up the old business of T. T. Leavel & Co.

The plaintiff asked the following instructions: "1. If the jury find from the evidence that the plaintiffs were a mercantile firm, located and doing business in Philadelphia, and that the defendant was a member of the mercantile firm of T. T. Leavel & Co., located and doing business in another state, the state of Mississippi, and that the claim of the plaintiffs in this action originated in mercantile dealings between said two firms for merchandise sold and moneys advanced by plaintiffs to and for said T. T. Leavel & Co., and for their benefit, in dealing as merchants, then any balance due from said T. T. Leavel & Co. to plaintiffs, on said transactions, is not subject to the limitation of two years provided by law for articles in a store account; nor is any portion of such balance, if any be due, which was for moneys advanced, included in the limitation of the act of assembly provided for upon accounts for goods, wares and merchandise sold and delivered. 2. If the jury find from the evidence that plaintiffs were a mercantile firm, and that T. T. Leavel & Co. were also a mercantile firm, composed of T. T. Leavel, Marbel Camden and John B. Camden; that T. T. Leavel & Co. became indebted to said plaintiffs in mercantile transactions for merchandise sold before the dissolution of said firm of T. T. Leavel & Co.; that the notice of dissolution read in evidence in this case was issued and published by authority of defendant; that T. T. Leavel, by defendant's authority and consent, had charge of the business

of T. T. Leavel & Co., and of the closing up and settling the same after its dissolution, and that in so closing up and settling the same he executed the drafts of $1639 35 sued on, then such drafts bound said defendant as a drawer thereof. 3. If the jury believe from the evidence that the drafts sued on in this action and given in evidence by plaintiffs, or either of them, were drawn by the authority or consent of the defendant, they must consider him as originally bound as drawer of such draft, and such authority and consent may be either verbal or written, or implied from circumstances. 4. That knowledge by defendant, if proven, that T. T. Leavel & Co. drew drafts signed " T. T. Leavel & Co.," in liquidation," and delivered them to creditors of that firm on account or in liquidation of its debts, after its dissolution, without any manifestation of disapprobation on the part of defendant, is evidence tending to show an authority from him for their being so drawn. 5. That if the jury believe from the evidence that at the time of the dissolution of the firm of T. T. Leavel & Co. said firm was indebted to the plaintiffs on promissory notes, and that the drafts sued on in this action or either of them were given after the dissolution of said firm by T. T. Leavel for said indebtedness to the plaintiffs, and accepted by them in good faith, and that said T. T. Leavel was at that time authorized by the defendant to close up the business of said firm, they will consider the defendant as a drawer of such drafts and originally held as such. 6. But if the drafts sued on in this action were never binding on the defendant, and they or either of them were given for promissory notes of T. T. Leavel & Co. to plaintiffs, then the plaintiffs may recover on the original account or cause of action for which said notes were given under the money counts, and the notes are *prima facie* evidence of such consideration. 7. That if the jury believe from the evidence that the drafts sued on in this action, or either of them, were made in good faith by T. T. Leavel, in the name of T. T. Leavel & Co., in liquidation for a debt or debts due from T. T. Leavel & Co. before dissolution, and in the course of the settlement of the busi-

ness of said firm were in good faith delivered to and received by the plaintiff, then, even if not binding as drafts on the defendant, they are evidence of an account stated in favor of the plaintiffs." The court thereupon gave the third instruction asked for, but refused to give the first, second, fourth, fifth, sixth and seventh instructions asked by plaintiffs.

The defendant asked the court to give to the jury the following instructions: "1. If the jury find that the two new bills of exchange mentioned in the declaration of the plaintiffs were drawn by T. T. Leavel after the dissolution of the firm of T. T. Leavel & Co., and after notice of such dissolution to the plaintiffs, and without authority from the defendant, then the plaintiffs are not entitled to recover in the present action upon the said bills of exchange. 2. The terms of the dissolution of the firm of T. T. Leavel & Co., as contained in the publication read in evidence, did not confer upon T. T. Leavel authority to draw the bills of exchange in question so as to bind the defendant. 3. If the jury find that the bills in question were drawn by T. T. Leavel, without authority from the defendant, after the dissolution of the firm of T. T. Leavel & Co., and notice thereof to plaintiffs, and were accepted by plaintiffs in payment of a pre-existing debt of T. T. Leavel & Co., then said debt was extinguished by the said bills, and the plaintiffs are not entitled to recover in the present action in respect to such pre-existing debts. 4. If the jury find that the plaintiffs, in January, 1829, were grocers, and then sold and delivered to the firm of T. T. Leavel & Co. a quantity of brandy and charged the same in account to said firm, then the plaintiffs were barred of their suit against the defendant to recover on the account for said brandy after the lapse of two years. 5. If the firm of T. T. Leavel & Co. was dissolved and an arrangement made by which the new firm of T. T. & H. Leavel took all the assets of the old firm and assumed the payment of all its debts, and if after notice of such dissolution and arrangement the plaintiffs took for their debt against the old firm the acceptance of the new firm on bills drawn by T. T. Leavel, then the plaintiffs are

not entitled to recover of the defendant in respect to such debt. 6. If the old firm of T. T. Leavel & Co. was dissolved and the new firm of T. T. & H. Leavel constituted in its stead, consisting in part of different members, and receiving the assets and assuming the debts of the old firm, and the plaintiffs, being creditors of the old firm and knowing its dissolution and the arrangement by which the new firm had assumed its debts, gave an extension of time of payment to the new firm on the debt of the old firm by receiving time bills accepted by the new firm without the consent of the retiring members of the old firm, then the retiring members were discharged by such extension of time of the debt to the plaintiffs."

The foregoing six instructions moved by the defendant were given by the court. The jury found a verdict for the defendant.

*Shepley,* for plaintiff in error.

I. Upon the dissolution of a firm it is competent for the partners to agree that the name of the old firm may be used in the renewal of notes and drafts, or in the transaction of any business of the late partnership.

II. The notice of dissolution in this case was designed to give and does give power to use the name of the firm in renewing the maturing obligations of the firm. What is the old business about which the name of the firm is authorized to be used? The goods had all been sold. There were then but two things remaining—the debts due to the firm and the debts due by the firm. The power given had certainly no reference to the debts due to the firm for two reasons, 1st, because after dissolution either partner may receive and receipt for a debt due to the firm unless there is some prohibition the knowledge of which must be brought home to the debtors (Story on Part. § 473); 2d, because in the notice of dissolution it is stated that the new firm are entitled to receive payment of debts due the firm. The receipt of the new firm was then amply sufficient to discharge the debt due the

old firm. The power then conferred was intended to operate only upon debts due by the firm. The debts of the old firm could be settled only by either paying them in cash or property, by giving the paper of the other people for them, or by renewing the paper or the debt. In payment the name of the old firm can not be used, nor can it be used in a settlement of the debts in any other way except in a renewal of the indebtedness. As it can only be used in the matter of renewals, it is not only a fair construction of the language that this power was intended to be given, but it is the necessary construction. (See Whitehead v. Bank of Pittsburg, 2 Watts & Serg. 172; 3 Watts & Serg. 347; Robinson v. Taylor, 4 Barr, 242; Brown v. Clark, 2 Harris, 468; Meyer v. Huggins, 1 Strobh. 473; Smith v. Winter, 4 Mees. & Wels. 454; Barton v. Isitt, 4 Barn. & Ald. 206.)

III. If the drafts sued on were, from want of power, never binding on defendant, then they were nullities, and as to the $1639 35, the plaintiffs are remitted back to the promissory notes for which the draft was given. (Perrin v. Keene, 19 Maine, 355.)

IV. Even if the notes were never binding, yet, having been given by the settling partner, they are evidence of an account stated. (Motherson v. Rathbone, 11 Wend. 96; Draper v. Bissel, 3 McLean, 275; Davis v. Jesangue, 5 Whart. 530; Robinson v. Naylor, 5 Barr, 242; Luckie v. Forsyth, 3 Jones & Lat. 388.)

*H. R. Gamble*, for defendant in error, cited Story on Part. § 155, 156, 322; Long v. Story, 10 Mo. 637; Pope v. Risley, 23 Mo. 186; Bell v. Morrison, 1 Pet. S. C. 367; 1 McMul. 210; Humphries v. Chastain, 5 Georg. 166; National Bank v. Norton, 1 Hill, 572; Martin v. Kirk, 2 Hump. 529; 1 Smith (Ind.) 129; Sandford v. Mickle, 4 Johns. 224; 2 Dess. 43; Evans v. Drummond, 4 Esp. 89; Reed v. North, 5 Id. 122; Thompson v. Percival, 3 Nev. & Man. 167; Hast v. Alexander, 2 M. & W. 483; Isler v. Baker, 6 Humph. 85; Oakley v. Pasheller, 10 Bligh, 589.

RYLAND, Judge, delivered the opinion of the court.

The record and proceedings in the court below show nothing which is relied on in this court for reversing the judgment until we come to the instructions asked and refused, as well as given and excepted to. The points then which have received our consideration arise on these instructions. It will be seen by the statement of the case that the court gave the third instruction asked for by the plaintiff and refused the others, and also that the court gave the six instructions asked for by the defendant.

Without minutely noticing each one of these instructions prayed for by the plaintiffs and refused, it is the opinion of this court that there is no error in refusing those not given; nor do we consider that the court erred in giving for the defendant the first, third and fourth instructions asked for by defendant. As to the second instruction we think it unnecessary to give any opinion in regard to the meaning of the words used by the parties in the notice of dissolution as they appear on the face of the instrument. We need not say what in law is the meaning of the terms employed in the notice, nor is it necessary for us to declare the meaning or extent of the power given by the notice considered as a mere instrument itself. The practical construction of the notice given by the parties themselves, or the acts of the parties in regard to the subject matter under the notice, may be properly looked to—properly taken into consideration, in order to ascertain what meaning the parties intended to attach to the instrument, and what power was intended by the partners to be used by T. T. Leavel. From all the acts done, and all the circumstances surrounding or attendant on the acts done, in regard to the dissolution and settling or winding up of the old firm, inferences may be drawn showing the meaning practically which the partners had when the notice was given, and what was their intention when the notice was thus drawn. This practical construction given by the parties themselves is a proper guide to its meaning, and is of more importance than

what is the abstract meaning which this court may attach to
its mere phraseology. (1 Stobb. 479.) "The business of a
court and jury is to ascertain the meaning and intention of
the parties in making an agreement, and to carry that into
effect if it is consistent with law. I know of no better mode
of ascertaining this meaning than is shown if all parties acted
on a particular meaning." (2 Watts & Serg. 175.)

We consider that the fifth instruction is calculated to mis-
lead the jury. The proposition of law contained in it we do
not controvert, but we consider it not warranted by the facts
of the case preserved in proof. The instruction is in these
words: " If the firm of T. T. Leavel & Co. was dissolved and
an arrangement made by which the new firm of T. T. & H.
Leavel took all the assets of the old firm, and assumed the
payment of all its debts, and after notice of such dissolution
and arrangement *the plaintiffs took for their debt* against the
old firm the acceptances of the new firm on bills drawn by
T. T. Leavel, then the plaintiffs are not entitled to recover of
the defendant in respect to such debt." This may well be so,
but here the bills are drawn in the name of the old firm—T.
T. Leavel & Co.; in liquidation; now, although T. T. Leavel
may himself have drawn these bills, yet when the bills in the
name of the firm of T. T. Leavel & Co., in liquidation, are
received by the plaintiffs, we can not say but that they may
have been so received in good faith, the plaintiffs really sup-
posing that T. T. Leavel had the power to sign the same.
Then this instruction may have misled the jury, the bill not
being in the name of T. T. Leavel, but of T. T. Leavel &
Co., in liquidation, yet made and drawn by T. T. Leavel.
The plaintiffs may have thought that he had the power to use
the name, and by receiving the bills in the name of the old
firm they did not intend thereby to rely alone on the new and
discharge the old. The expression " took the bills for their
debt" is too loose. This may likewise have had a bad effect
on the jury. (Story on Part. § 155 and note 2.) If the bills
had been signed by T. T. Leavel alone, drawn by him in his
own name on the new firm of T. T. & H. Leavel, and the

plaintiffs had taken and accepted them in payment or satisfaction of the debt of T. T. Leavel & Co. to them, then the old firm may have been discharged from such debt; and if the bills were drawn by T. T. Leavel, and he, without any authority, signed the name of the old firm to the bills, and this was known to the plaintiffs, and they accepted such bills in payment of the debt of the old firm, then the instruction might have been proper. But as it is, we consider it may have misled the jury to the plaintiffs' injury, and in this the court below committed error. The sixth instruction is improper for the same reasons as the fifth, and should not have been given. The doctrine of extension of time is not considered by us as properly arising on the bills as they have been drawn in the case, and therefore is not passed upon by the court.

So much for the points arising on the instructions. As the case has to go back, it may be well to refer to some general principles of law which may be considered applicable to a proper determination of the controversy. (Story on Contracts, § 244, 246 ; Story on Partnership, § 156, 328 ; 1 McMullan's Rep. 209; 1 Strob. 499.) "It is clear that the mutual agency of the partners which is created by the partnership ceases when it is dissolved, and that after dissolution neither can make a note or any other contract binding on the other partners unless he is authorized by them so to do. It is not necessary that this authority should be created by a special power of attorney or other instrument, but may be conferred by parol. The transactions of trade by their daily frequency and necessary promptness do not admit of formal and precise stipulations. Usage and custom of merchants to a great extent determine the import and effect of brief expressions; and good faith, the necessary element of trade, must supply, from the character and objects of the agreement, the intention of the parties." (Myers v. Huggins & Stein, 1 Strobh. 477.)

There is no doubt that the law is well settled that if one partner goes out of a firm and another comes in, the debts of the old firm may, by consent of all three parties—the credi-

tors, the old firm and the new — be transferred to the new. (Hart v. Alexander, 2 Mees & Wels. 484.) If in this case the Pattersons, after notice of dissolution of the firm of T. T. Leavel & Co., continued to deal with and extend credit to T. T. & H. Leavel, then they have no right to look to the old firm of T. T. Leavel & Co. for such indebtedness created after notice of the dissolution of the old firm; and if upon notice of the dissolution they afterwards accepted drafts drawn by T. T. Leavel, in the name of the old firm, on the new firm of T. T. & H. Leavel, for the indebtedness to them of the old firm, and from time to time continued to give credit to the new firm by a renewal of the drafts, they can not be afterwards allowed, upon the failure of the new firm, to call upon the old firm for payment, unless such drafts and such renewals were shown to be made with the consent of the old firm.

If upon the new trial it shall appear that the drafts in suit were for indebtedness created by the new firm after the plaintiffs knew that the old firm had dissolved partnership, then, unless these drafts were drawn by the consent and authority of the old firm, they can not be bound by it. Let the judgment below be reversed and the cause remanded for further trial; Judge Scott concurring; Judge Leonard absent.