# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1899.

*(Continued from Volume 154.)*

155 1
162 293

## CITY OF ST. LOUIS v. THE LACLEDE GAS LIGHT COMPANY, Appellant.

### Division Two, March 5, 1900.

1. **Contract for Electric Lights:** CITY'S INTEREST IN PROCEEDS FOR PRIVATE LIGHTING: ORDINANCE: ACCEPTANCE. A city's contract with a company for furnishing the city with electric lights expressly provided that the consideration was the privilege of furnishing along the city's streets electricity for light and power to private parties, and in one paragraph said that the city should "in making a statement of the gross receipts required by" an ordinance, "deduct therefrom all sums payable by the city." Aside from this there was no express promise to pay anything, but the ordinance referred to required the company to file statements of its gross receipts semi-annually, and "to pay into the city treasury five per cent of the amount of the gross receipts," and the contract further provided that "all operations under this privilege shall be subject to all existing ordinances appertaining to the furnishing of electricity for

St. Louis v. Laclede Gas Light Co.

light or power." But the ordinance also recited certain requirements to be accepted in writing by the contractor as the conditions on which he can enjoy the privileges conferred by this general ordinance and this privilege was by the ordinance made a precedent condition to his liability on the contract for the payment of the five per cent. This acceptance the company did not sign, nor did it avail itself of some of the privileges conferred. Nor were any of the requirements written in the contract except the one about the filing of semi-annual statements showing the amount of gross receipts. *Held*, that the company is not liable for five per cent of the amount received by it from private persons along the streets lighted by it.

**2.** ————: CONTEMPORANEOUS INTERPRETATION. The contemporaneous interpretation of a contract by the parties thereto, is, when the language is ambiguous, entitled to great if not controlling influence. And the fact that the city entered into this contract and made no demand for the five per cent for six years, although it was entitled to it every six months if at all, must be regarded as an understanding by it that it was not entitled to the claim.

Appeal from St. Louis City Circuit Court.—*Hon. John M. Wood*, Judge.

REVERSED.

*I. H. Lionberger* for appellant.

(1) There is no covenant from which an obligation on defendant's part to pay into the city treasury five per cent of its gross receipts from private lighting, can be inferred. (a) The requirement that the "operations" of the contractor shall be in accordance with and subject to all existing and future ordinances of the city does not even suggest an obligation to pay five per cent of his gross receipts, much less does it necessarily imply such obligation. Indianapolis v. Gas Co., 27 L. R. 517. (b) The agreement of the city that the contractor shall have the right, when making the statements of gross receipts required by section 590 of the revised ordinances to deduct the amounts paid by the city, does not by implication impose upon him the obligation to pay five per cent of such

receipts into the city treasury. Section 590 contains several distinct requirements. One only of these requirements is mentioned in the contract, to-wit: That statements of gross receipts shall be filed. The contract does not provide that "the contractor, when making payments of five per cent on his gross receipts as required by section 590," shall be entitled, etc. Where there is an express covenant, one will never be implied which is broader. Noke's Case, 4 Co. 80; Kent v. Walsh, 7 John. 258; Wallon v. Kauffman, 19 John. 97; Canal Co. v. Coal Co., 75 U. S. 276. (c) But if it be assumed that the contract binds the contractor, not only to conduct his operations in accordance with the police regulations prescribed by the city, but to do all other things required by the general ordinance, and particularly by section 590; still it does not require the defendant to pay five per cent of its gross receipts, because there is no such requirement in section 590, or any other part of the general ordinance. Section 590 provides that no person shall avail himself of the "privilege hereby conferred," unless he shall pay five per cent of his gross receipts. The tax is, in terms, imposed upon such persons only as use the privilege conferred by the general ordinance. The record in the present case shows and the city admits that defendant has never used the privilege conferred by the general ordinance. His contract "carried" a special privilege as an "additional consideration" to the cash payments made for public lighting. Giving, therefore, the widest possible scope to the covenant, still it does no more than bind the contractor to pay five per cent of his gross receipts if he shall use the privilege conferred by the general ordinance. This he has never done. (d) Even if it be admitted that the contract should be so interpreted as to require the contractor to pay five per cent of all gross receipts derived from the exercise of the privilege conferred by the contract, still the plaintiff can not recover, because it has not been proved nor attempted to be proved that the defendant ever used or

availed itself of such privilege. It has used its charter powers derived from the State, and neither the ordinance nor the contract can by any possible construction be held to impose a tax upon the exercise of such power. The ordinance and contract are permissive. A "privilege" is not a duty. The Laclede Gas Light Company was not bound to use a city franchise when it already had from the State power to do the same thing. Railroad v. St. Louis, 66 Mo. 258. (2) If the contract does not bind the defendant to pay the five per cent tax, it can not be held liable under the general ordinance, because, first, this is a suit on an express contract and not on the ordinance; second, if the ordinance alone were relied on, it would be void as impairing the obligation of the gas company's contract with the State. State ex rel. v. Gas Co., 102 Mo. 472; Balto. v. Railroad, 33 L. R. A. 503; Hodges v. W. U. Tel. Co., 29 L. R. A. 770; Railroad v. Hefley, 158 U. S. 104; N. O. Gas Co. v. Louisiana Light Co., 115 U. S. 650; N. O. Waterworks Co. v. Rivers, 115 U. S. 674; Louisville Gas Co. v. Citizens' Gas Co., 115 U. S. 683; Mugler v. Kansas, 123 U. S. 623; Brennan v. Titusville, 153 U. S. 300; Railroad v. Husen, 95 U. S. 472; State ex rel. v. St. R'y, 85 Mo. 263; City of Kansas v. Corrigan, 86 Mo. 67; Sloan v. Railroad, 61 Mo. 31; State ex rel. v. Greer, 78 Mo. 194; Railroad v. Jacksonville, 67 Ill. 37; People v. Jackson P. L. Co., 9 Mich. 307; Railroad v. Memphis, 53 Fed. Rep. 715; Cooley's Const. Lims. (5 Ed.), pp. 706, 712, 713; Tiedeman on Police Power, secs. 191, 194; 1 Hare's Amer. Const. Law, p. 618; 2 Beach on Pub. Corps., secs. 1229, 1249.

*Edw. C. Kehr* for respondent.

(1) The reference to the ordinance makes it a part of the contract. Sec. 590 is as much a part of the contract as if set out in it. Johnson Co. v. Wood, 84 Mo. 489; Union

Depot Co. v. Railroad, 131 Mo. 291; Wiley v. Robert, 27 Mo. 388; s. c. 31 Mo. 212; Briggs v. Munchon, 56 Mo. 467; Hays v. Perkins, 109 Mo. 102; West v. Bretelle, 115 Mo. 653; Lewis v. Penn. M. Ins. Co., 3 Mo. App. 372; Boeckeler v. McGowan, 12 Mo. App. 507; Gallaher v. Smith, 55 Mo. App. 116. (2) Read in connection with the ordinance, there is no doubt or ambiguity about the contract, and hence there is nothing to construe. Lamar Co. v. City of Lamar, 128 Mo. 198; Lake Co. v. Rollins, 130 U. S. 662; Cooley's Const. Lim. (6 Ed.), p. 69; State ex rel. v. Gammon, 73 Mo. 421; Lawson on Contracts, secs. 386 to 389. (3) Where a contract is open to two constructions, one making it legal and the other illegal, the former must be adopted. Wiggins Ferry Co. v. Railroad, 128 Mo. 224; Lamar Co. v. City of Lamar, 128 Mo. 199; Hobs v. McLean, 117 U. S. 567. (4) The contractor agreed to make, and the appellant actually did make, the sworn returns required by section 590. The section shows that these returns are required for the purpose of basing on them the five per cent assessment and are to be accompanied by the payment of the amount. (5) The contractor, having stipulated that he should be entitled to deduct from his returns all sums paid or payable by the city, it necessarily follows that he must pay the percentage on all the balance of his gross receipts. Words of exception or reservation are regarded as the words of the party in whose favor the exception or reservation is made and must be construed most strongly against him. McManus v. Gregory, 16 Mo. App. 375. (6) The construction contended for by the appellant eliminates from the contract the provision above alluded to. In fact, the success of appellant's argument depends upon having the above provision discarded as meaningless. But a contract will never be so construed as to nullify any of its material provisions. Effect must be given to all its parts. Shickle v. Chouteau, etc., Co., 84 Mo. 161; Lamar Co. v. City of Lamar, 128 Mo. 217; Union Depot Co. v. Railroad, 131 Mo.

291; Cooley's Const. Lim. (6 Ed.), p. 72; Shickle v. Chouteau, etc., Co., 10 Mo. App. 241; Haarstick v. Shields, 11 Mo. App. 602.

BURGESS, J.—This is an action by plaintiff against the defendant as assignee of a contract entered into by plaintiff and one Charles A. Brown on the 13th day of March, 1889, in regard to electric lighting certain parts of said city to recover the sum of $6,530.04, being five per cent of the gross receipts on $130,600.99, received by defendant under said contract between the first day of January, 1890, and the 30th day of December, 1894, for electric light and power sold by it to private parties and corporations, and which plaintiff claims, is due to it by defendant under the terms of said contract and which it refuses to pay.

The petition alleges that plaintiff and defendant are both corporations, plaintiff being a municipal corporation; that on and prior to the several dates mentioned in the petition, article 11, chapter 15, of the revised ordinances of said city of 1887, and section 590 of said article and chapter, were in full force, and that by the provisions of said section it is provided and ordained that any person or persons, corporation or association, placing along or across any of the streets, alleys or public places of the city of St. Louis, wires, tubes or cables, conveying electricity for the production of light or power, shall agree to file with the comptroller of said city, on the first days of January and July of each year, a sworn statement of his or its gross receipts, from his or its business, arising from supplying electricity for light or power, for the six months next preceding such statement, and shall agree to pay into the city treasury, at the time when filing said statement, two and one-half per cent on the amount of such gross receipts up to the year 1890, and five per cent on the amount of such gross receipts thereafter. That whilst the aforesaid revised ordinance and the above quoted section

thereof were in full force, to-wit, on the 13th day of March, 1889, one Charles A. Brown, as party of the first part, entered into an agreement, in writing, with the plaintiff as party of the second part, bearing said date, in and by which agreement, the said Charles A. Brown, for the consideration therein named, covenanted and agreed to and with the plaintiff, at his own proper cost and expense, for the term of ten years, from and after January 1, 1890, to do all the electric lighting of the northern district of the city of St. Louis, so far as said district is to be lighted by incandescent lights; said district comprising all the territory in the city of St. Louis, north of a line coincident with the southern line of Washington avenue extending from the eastern to the western boundaries of the city.    That in and by said contract, the plaintiff granted to said Charles A. Brown, the privilege of furnishing electricity for light and power to consumers other than the plaintiff, that is to say, to private parties and corporations, for the term of ten years from and after January 1, 1890, and said Charles A. Brown agreed that all operations under said privilege should be in accordance with and subject to all then existing ordinances, rules and regulations of the city of St. Louis, appertaining to the furnishing of electricity for light and power, or to any such that might thereafter be established; and plaintiff agreed that the said Charles A. Brown, when making the statement of gross receipts, required by the aforesaid section 590, of article 11, chapter 15, of said revised ordinance, should be entitled to deduct therefrom all sums paid or payable by the plaintiff.    That said contract was approved by the Municipal Assembly of the city of St. Louis, by ordinance No. 14917, entitled "An Ordinance to approve the contract for lighting with electricity the city of St. Louis," approved March 29, 1889.    That by said agreement, the said Charles A. Brown did agree to file with the comptroller of the city of St. Louis, on the first days of January and July of each year, beginning with the year 1889, a statement of his

gross receipts, arising from supplying electricity for light or power to consumers other than plaintiff, for the six months next preceding such statement, and to verify such statement by his oath. And plaintiff furthermore states that by said agreement, said Charles A. Brown did agree to pay into the city treasury, at the time of filing such statement, two and one-half per cent on the amount of such gross receipts, during the year 1889, and five per cent on the amount of all such receipts after the first day of January, 1890.

The petition further alleges that ordinance 15285 of the city of St. Louis, entitled "An Ordinance authorizing the assignment of the Electric Lighting Contracts and the substitution of new sureties thereon," was duly passed by the Municipal Assembly of said city, and approved August 13, 1889, which said ordinance authorized the said Charles A. Brown by an instrument in writing to assign said contract to another; and that on the 24th day of August, 1889, by authority of said ordinance, he did, by an instrument in writing, assign and transfer the said contract to the defendant, the Laclede Gas Light Company, and the defendant joined in and accepted said assignment and undertook and agreed to perform said contract, and all the conditions and stipulations therein contained, which were to be performed by said Charles A. Brown, for the consideration therein specified to be paid by plaintiff; which said assignment was duly approved by the council of said city October 29, 1889, and approved and accepted by plaintiff, and so acted upon by plaintiff and defendant. That shortly after said 29th day of October, 1889, the defendant entered upon the execution of said contract, and placed along and across the streets, alleys and public places of the city of St. Louis, its wires, tubes and cables, conveying electricity for the production of light and power, and availed itself of the privilege granted to said Charles A. Brown by plaintiff, and assigned to it as aforesaid, of furnishing electricity for light and power to consumers other than

plaintiff; and plaintiff states that defendant did thereafter furnish and supply electricity for light and power to private parties and corporations, and derived therefrom the gross receipts hereinafter set forth; that pursuant and in obedience to said section 590, article 11, chapter 15, of said revised ordinance, defendant, on the first days of January and July of each year, filed with said comptroller its statement or return of its said gross receipts, for the preceding six months, verified as said section requires ; and that said gross receipts, as shown by said returns, and after deducting all the sums paid or payable by the city from January 1, 1890, to December 31, 1894, to have been $130,600.99.   That the sum above stated is defendant's gross receipts for electric light and power supplied or furnished by it under  and by virtue of the terms of said contract with plaintiff, to consumers other than plaintiff; that by the terms of said contract and the assignment thereof, defendant is bound to pay five per cent of said gross receipts of $130,600.99, being the sum of $6,530.04, for which, with interests and costs, plaintiff prays judgment.

The defendant answered, admitting its incorporation and the execution and assignment of the contract, but denying its liability thereunder to pay five per  cent of its gross receipts.

By way of special defense, the defendant alleged that it was authorized by its charter to sell electricity for private lighting by means of the streets of the city of St. Louis, and that in so far as the general ordinance purported to impose a tax of five per cent upon its gross receipts, it violated the obligation of said charter as a contract with the State, and was therefore in conflict with the Constitution. of the State of Missouri and of the United States.   The defendant further urged, by way of special defense, that it had never used or exercised the privilege conferred by the general ordinance, and that nothing contained in the Brown contract sued on imposed any such obligation upon it.

St. Louis v. Laclede Gas Light Co.

There is no disagreement with respect to the facts, which are substantially these:

In 1884 the city of St. Louis passed an ordinance, No. 12723, authorizing "any person, corporation or association" to use the streets and alleys of the city for the distribution of electricity upon certain conditions. Among these conditions it was provided that every person, corporation or association availing itself of the "privilege conferred by the ordinance," should —

1st.   Observe all regulations prescribed by the board of public improvements.

2d.   File with the board of public improvements an application stating in detail the streets and alleys to be occupied, and the manner in which the wires, etc., should be supported, secured and insulated.

3d.   Comply with certain conditions with respect to the character and location of poles, and the repair of streets, etc.

4th.   File with the city register:

(a)   A written acceptance of all the terms of the ordinance.

(b)   An agreement that he or it will file with the comptroller, on the first days of January and July of each year, a statement of his or its gross receipts from its business for the six months next preceding such statement.

(c)   A further agreement that he or it will at the time of filing such statement pay into the city treasury five per cent on the amount of such gross receipts.

(d)   A bond in the sum of $20,000, conditioned that he or it will comply with all the conditions of the ordinance, or any ordinance thereafter passed regulating the placing of wires, tubes or cables in the streets, and with all regulations of the board of public improvements, and make the statements and payments required, and save the city harmless from all lessor damage on account of the exercise of the privileges granted by the ordinance.

5th.   Procure a permit from the board of public improvements.

Neither Charles A. Brown nor the Laclede Gas Light Company ever applied for any permit under the foregoing ordinance.   Neither of them asked for, accepted or used any of the privileges thereby conferred.   Neither of them filed the acceptance, agreement and bond thereby required.

On the 29th day of December, 1888, the city passed an ordinance entitled "An ordinance to provide for lighting the city north of Keokuk street with electricity, for a term of ten years from January 1, 1890," which directed the board of public improvements to advertise for proposals, and "to set forth in detail in the advertisements the forms and conditions governing the bids."

Pursuant to this ordinance the board of public improvements advertised for proposals in the Star Sayings of St. Louis, and set forth in such advertisement, among other things, that the contract with the city "would carry the privilege of furnishing electricity along the lines of distribution."   The advertisements also declared that the "specifications, the form of contract, and the plans of the district to be lighted might be seen at the office of the B. P. I. of the city of St. Louis, on or after January 28, 1889."

Among the contracts referred to in and exhibited under the advertisement was what is known as "Letting No. 2504." Charles A. Brown made, pursuant to the advertisement, a proposal for doing the lighting therein required, upon the terms therein set forth, which was accepted by the city; and thereupon the contract sued on was entered into by the city and Brown.

This contract provided, among other things, that "in consideration of the premises, and in further consideration of the privilege of furnishing electricity for light and power to private parties and corporations hereinafter granted by said city, the said Brown agrees to do all the lighting called for in

this agreement, in the manner and under the conditions herein specified."

Section J of the same contract, provided that the city grants, "as a consideration to Brown, the privilege of furnishing electricity for light and power to consumers other than the city; and Brown agrees that all his operations under his privilege shall be in accordance with and subject to all existing city ordinances, rules and regulations pertaining to the furnishing of electricity for light and power, or which hereafter may be established; it being agreed, however, that Brown shall be entitled, when making the statement of gross receipts required by section 590, chapter 15, of the revised ordinances of 1887, to deduct therefrom all sums paid or payable by the city of St. Louis."

It was further agreed that said privilege of furnishing electricity for light and power was to continue for a term of ten years from and after January 1, 1890, and that at the expiration of said term of ten years the privilege should absolutely cease and expire; and that all the electric lighting done under the contract by Brown, "and the use of the privilege therein granted," should in all respects be in accordance with certain specifications; and that Brown should not sublet the electric lighting to be done under the contract, or the furnishing of electricity, to parties other than the city.

Section U of the contract provided that Brown should receive, "in addition to the consideration of the privilege of furnishing electricity for light and power to parties other than the city," certain prices therein specified, as full compensation for the public lighting, etc.

The contract was subsequently assigned to and accepted by the Laclede Gas Light Company, with the consent of the city of St. Louis, evidenced by an ordinance approved August 13, 1889, and that company has since that time been performing the obligations thereby imposed.

In September, 1892, the comptroller of the city of St.

Louis notified the Laclede Gas Light Company to file a statement of its gross receipts and show cause why it should not make the payments required by the general ordinance. Pursuant to such notice the company filed statements of its gross receipts for each period of six months, beginning January 1, 1890, and has continued to do so since that time; but it refused to pay to the city five per cent of its gross receipts, and at the time of making its statements protested, for substantially the same reasons that are now argued, against any construction of the contract which would impose that burden upon it.

The case was tried by the court, a jury being waived. No declarations of law were asked, with the exception of one by defendant in the nature of a demurrer to the evidence, which was refused.

The trial resulted in a judgment for plaintiff for the amount sued for, and, after an unavailing motion for a new trial, defendant appeals.

The provisions of the contract upon which this action in the main depends are as follows:

"It is hereby agreed by and between the parties to this contract, that the said party of the second part grants as a consideration to the said party of the first part the privilege of furnishing electricity for light and power to consumers, other than the party of the second part; and said Brown further agrees that all operations under this privilege shall be in accordance with and subject to all existing city ordinances, rules and regulations appertaining to the furnishing of electricity for light and power or which may hereafter be established, it being agreed, however, by said city that Brown shall be entitled, when making the statement of gross receipts required by sec. 590, chap. 15, of the Revised Ordinances of 1887, to deduct therefrom all sums paid, or payable by the city of St. Louis, and it is further agreed by and between the parties to this contract, that the said privilege of furnishing electricity for light and power is to continue for the term of ten years,

from and after January 1, 1890, and that at the expiration of said term of ten years this privilege shall absolutely cease and expire."

Section 590 of the Revised Ordinances 1887, is as follows:

"No person or persons, corporation or association, shall be entitled to any of the privileges conferred by this article, except upon the following conditions: That said person or persons, corporation or association, before availing himself or itself of any of the rights or privileges granted by this article, shall file with the city register his or its acceptance of all the terms of this article, and agree therein that he or it will file with the comptroller of the city, on the first days of January and July of each year, a statement of his or its gross receipts from his or its business arising from supplying electricity for light or power for the six months next preceding such statement, which shall be sworn to by such person or persons, or the president or secretary of such corporation or association; and further agree that he or it will, at the time of filing said statement with the comptroller, pay into the city treasury two and one-half per cent on the amount of such gross receipts up to the year 1890, and five per cent on the amount of gross receipts thereafter. And said person or persons, or corporation or association, shall, at the time of filing said acceptance, also file with the city register his or its penal bond in the sum of $20,000 with two or more good and sufficient securities, to be approved by the mayor and council, conditioned that he or it will comply with all the conditions of this article, or any ordinance which may be hereafter passed regulating the placing of wires, tubes, or cables in the streets and alleys for the purposes therein named; that he or it will comply with all the regulations made by the board of public improvements having reference to the subject embraced in this article or any ordinance for the purposes herein named; that he or it will make the statements and payments required by the pro-

visions of this section, and will save the city of St. Louis harmless and indemnified from all loss, cost or damage by reason of the exercise of any of the privileges granted by this article or any ordinance which may be hereafter passed relating to the subject-matter of this article."

It is claimed by defendant that there is nothing in the provision of the contract quoted, or in section 590 of the ordinances, which bound it in terms to pay five per cent of its gross receipts to the city.

In order to a correct interpretation of the contract, the facts and circumstances which led up to and were connected with its execution, as well also as the subsequent action of the parties thereto, are important factors to be considered, as it is by such circumstances that we are enabled to arrive at the real intent of the parties.

Prior to the year 1890, the streets of the city of St. Louis were lighted by gas lamps. In the year 1888, the city determined to change its method in this regard, and to adopt after January 1, 1890, electricity in lieu of gas, and to that end passed an ordinance directing its board of public improvements to advertise for bids for such lighting and "to set forth in detail in the advertisement the forms and conditions governing the bids."

In pursuance of this ordinance, an advertisement was duly made in a St. Louis paper in which it was stated that the contract to be entered into between the city and the successful bidder "would carry the privilege of furnishing electricity for light and power to private parties and corporations along the line of its distribution" and that the form of such contract might be seen in the office of the board of public improvements.

That the purpose of this promise of the privilege of doing a private electric lighting business, was to secure a low cash bid for the public lighting, is beyond any question, because there could have been no other purpose in incorpor-

ating it in the advertisement. This is manifest from the words following, which state that, "as a consideration to the contractor of the privilege of furnishing electricity for light and power to private parties," etc., the contractor agrees to receive, "in addition to the consideration of the privilege of furnishing electricity for light and power to private parties, the following prices as full compensation," etc. These clauses show beyond any controversy that the purpose of the privilege of doing a private lighting was to induce a low bid for public lighting.

It is true that the contract provides, "And the said party of the first part further agrees that all operations under this privilege shall be in accordance with and subject to all existing city ordinances, rules and regulations appertaining to the furnishing of electricity for light and power, or which may hereafter be established," but the express covenant to obey in the "operation" of the company all the regulations of the city, and to make statements of gross receipts, does not express or imply a promise on the part of the company to pay a percentage of the gross receipts, and meant nothing more than that the methods employed by the contractor for distributing electricity, size and location of the poles, insulation of the wires, and other safeguards should be in conformity with the ordinances of the city. This paragraph however contains this further provision. "It being agreed, however, by the party of the second part, that the party of the first part shall be entitled, when making the statements of gross receipts required by said section 590, to deduct therefrom all sums paid or payable by the city of St. Louis."

This is the only clause in the contract upon which an argument can be based that the contract confers the right upon the city to recover five per cent of the gross receipts for private lighting, and then only by implication if that, for there is no express promise in the contract to pay anything. But even this construction would be in conflict with and repugnant

St. Louis v. Laclede Gas Light Co.

to the provisions .of the contract by which it is expressly provided that the consideration for the privilege was the furnishing of electricity for light and power to private parties and corporations.

It is a universal rule with respect to the construction of written contracts that full force and effect must be given to all of their provisions so as to harmonize them if possible, and when this is done there is nothing in the contract in question which can be construed as meaning that the contractor should pay the five per cent sued for.

Plaintiff however contends that by reference in the contract to the ordinance makes the latter part of the contract, and theretofore section 590 of the ordinance is as much a part of the contract as if copied into it, and when the contract is read in connection with the ordinance there is no doubt or ambiguity about the contract, and. hence there is nothing to construe.

There is no doubt as to the correctness of the first proposition, that is, that when a written contract refers to another written or printed instrument that the latter is made part of the contract.    It was so ruled in County of Johnson v. Wood, 84 Mo. 489; Briggs v. Munchon, 56 Mo. 467; Hays v. Perkins, 109 Mo. 102; West v. Bretelle, 115 Mo. 653; Boeckcler v. McGowan, 12 Mo. App. 507, and Gallaher v. Smith, 55 Mo. App. 116.    In the case last cited it is held, that where a special ordinance directing the construction of a sidewalk ordered it to be constructed in the manner and of the material named in a certain section of a general ordinance relating to sidewalks, such section of the general ordinance was thereby made part of the special ordinance.    But how plaintiff finds any comfort in construing the contract and ordinance together, as one instrument, we are unable to see.

The ordinance adds nothing whatever to the terms of the contract, and imposes no contractual liability upon defendant not created by the contract itself.

Vol. 155 mo—2

St. Louis v. Laclede Gas Light Co.

It provides, it is true, that no person, corporation or association shall be entitled to any of the privileges conferred by the article of which it is a part, except on the conditions therein named, which are that a written acceptance of all the terms of the article shall be that semiannual statements of gross receipt shall be filed, that at the time of filing such statements five per cent of such gross receipts shall be paid into the city treasury, and that a bond for $20,000, conditioned to be void if all the conditions and regulations of the article shall be complied with, shall be filed.

But neither the defendant nor its assignor Brown ever accepted or availed itself or himself of the privileges conferred by the general ordinance which was a precedent condition to their liability on the contract for the per cent. Besides only one of these requirements is mentioned in the contract, and that is the one which requires a statement of the gross receipts to be filed every six months.

The city counselor in a written opinion of date September 23, 1893, in construing this same contract, among other things said:

"Section 590 requires, first, a statement of gross receipts every six months; second, the payment of five per cent; and third, the filing of a penal bond, and as this part of paragraph J speaks only of the first, the filing of such statement, and says nothing about the second, the payment of the five per cent, or the third, the filing of the bond, we must conclude that there was some purpose and intention in limiting the obligation of the contractor to the observance of the first requisite. Thus limited, the whole paragraph harmonizes, and paragraph B and the promise of the advertisement are consistent, and the right or privilege promised is preserved and the duty or obligation of the contractor ends with the filing of the statement. If it had been intended that the contractor should pay the five per cent, why did this paragraph refer only to the filing of the statement, and say nothing about the payment of the five per cent? It can only mean

that the framer of the contract knew that a part of the consideration for the contract was that the contractor was to have the privilege of doing private business without paying five per cent of his gross receipts, and therefore carefully limited the obligation to filing the statement. But the question arises, why did the city want a statement of gross receipts to be filed if it was not to get five per cent thereof? I can easily conceive the advantage the city would gain by having such information. It would be most valuable information if the city desired to take possession of the plant and work it before the end of the contract. It would also be an important factor in deciding the course to be pursued by the city at the end of the contract, when it would have to decide whether it would avail itself of its privilege of buying the whole plant, or a part of it. And it would be most useful information to have in case the city wants to make another contract for lighting the city with electricity, for it would inform bidders of the value of the privilege which the city gives to contractors who do public lighting."

The views expressed find support in the contemporaneous interpretation of the parties, which when the language of a contract is ambiguous is entitled to great, if not controlling influence. [Topliff v. Topliff, 122 U. S. 121; St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121; Jones v. DeLassus, 84 Mo. 541; Sedalia Brewing Co. v. Sedalia Waterworks Co., 34 Mo. App. 49.] Thus in speaking of this same subject in St. Joseph Union Depot Co. v. C., R. I. & P. Ry. Co., 131 Mo. loc. cit. 305, it was said: "It would seem that the long previous action of the defendant and all the other parties to this contract ought to be a very significant answer to this claim, for, as was well said in Whitehead v. Bank, 2 W. & S. 175: 'The business of a court and jury is to ascertain the meaning and intention of the parties in making an agreement, and to carry that into effect, if it is consistent with the law. I know of no better mode of ascertaining this meaning than is

shown if all parties acted on a particular meaning.' " The contract sued on was executed in 1889, while no demand was made for the tax in question until 1895. This non-action on the part of the city for so long a time after the execution of the contract, and the failure of the defendant and Brown to comply with what plaintiff claims was the terms thereof, must be regarded as so interpreting it that they were not legally bound by its terms to pay the five per cent sued for.

Our conclusion is that the declaration of law asked by defendant in the nature of a demurrer to the evidence should have been given, and that because of its refusal the judgment should be reversed. It is so ordered.

*Gantt, P. J.*, and *Sherwood, J.*, concur.