## THE ST. JOSEPH UNION DEPOT COMPANY v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*.

### Division One, November 26, 1895.

1. **Railroad**: USE OF DEPOT: CONTRACT, CONSTRUCTION OF.    Two railroad companies, designated respectively as the Iowa and the Kansas lines, contracted at the same time with plaintiff, a union depot company, whereby each company promised to pay a certain sum as rental for the use of the depot by each company "for all its passenger trains destined for, or departing from, the city." Prior to the contracts, the Iowa company had leased the line of the Kansas company, and after the execution of the contracts, conveyed to the defendant company, which had no contract with plaintiff for the use of its depot, its line, together with all leases and privileges. The rentals provided for in the contracts with each of the companies were paid, either directly or indirectly, by defendant, for several years after it bought the Iowa company. *Held*, that the defendant was not entitled to use the depot of both the Iowa and Kansas lines, on payment only of the rental provided in the contract with the Iowa company.

2. ———: ———: ———: ———.    The practical construction given by the parties to a written contract, is a potent factor in determining its meaning.

3. ———: ———: ———: ———.    The defendant in this case having used the depot for the Kansas line, it is liable for the rent provided for in the contract with the Kansas company.

4. ———: ———: ———: ———.    The fact that defendant purchased the Kansas line under the foreclosure of a mortgage executed before the contract with plaintiff, does not affect its liability for the payment of the rent where it uses the depot for the Kansas line trains.

5. **Pleading**: RENT: REPLICATION.    A claim for an installment of rent which has fallen due since the commencement of the suit, may be set up in the replication.

6. **Appellate Practice**: WAIVER.    An objection to a judgment on the ground that it is excessive is not available for the first time on appeal.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*Brown & Pratt* for appellant.

(1)  The judgment is excessive; the suit is for $4,800, while the judgment is for $7,767.76.  (2)  The terms of the contract under which the Rock Island company is entitled to the use of the union depot, are plain and unambiguous.  It is not even hastily drawn. In its preamble it states that, "it is important that the rights, duties, and liabilities of each, in regard to the whole subject-matter of said depot, its appurtenances, use, care, control, rental, taxes, expenses, renewals, and repairs, shall be stated and defined," and it undertakes to so state and define them.  The parties are bound by the terms of their contract, and the court will not interpolate something not stipulated by them.  *Fruin v. Railroad*, 89 Mo. 397.  (3)  The ruling in the case of *Union Depot Co. v. Railroad*, 113 Mo. 213, is decisive of this case.  (4)  Under the lease of May 15, 1886, from the Kansas company to the Iowa company, the last named company had the right, pursuant to the terms of its contract with the depot company, to run all its trains, originating on the road of the Kansas company, into the union depot at St. Joseph.  *Union Depot Co. v. Railroad, supra.*  And the Rock Island, as the assignee of the Iowa company's lease and contract, would of course have the same right.  The principal point last stated, having been expressly determined by this court in the case cited, it only remains to consider whether anything happened after May 15, 1886, to deprive the Iowa company, or its assignee, of that portion of the benefits of its lease.  (5)  The petition states that under the

lease of May 15, 1886, the Iowa company "entered into the possession of the railway property and franchises" of the Kansas company, so that from and after that date it had no train to run into the union depot, and existed and exercised its franchises only for the purpose of receiving thirty per cent of the gross earnings of its lines and property, and paying its bonded and other indebtedness. It might seek to acquire influence in the management of the depot company by subscribing to its stock, and securing a director, and perhaps by contracting to pay a portion of its interest and operating expenses, but it could not contract away any right already granted to its lessee, nor bind its lessee to the payment of anything, and it did not attempt to do so. This makes it unnecessary to determine how far the union depot contract "ran with the property," as it never attached to the property then in possession of the Iowa company under perpetual lease. There never could come a time when the contract of the Kansas company could become operative to charge the property with a burden as against its own grant. (6) Had the Rock Island company purchased the remainder in the Kansas company's property (if there can be said to be a remainder over, after a nine hundred and ninety-nine year lease), at voluntary sale, it could not have the effect to charge the property with the Kansas company's depot contract, because that contract, being limited to fifty years, could not, by any possibility, attach to such remainder. But the fact is that at the master's sale under the mortgage of May 14, 1886, the Rock Island purchased a title paramount to the Iowa company's lease, and to every other incumbrance or burden the Kansas company might seek to impose after the execution of the mortgage. It could do no act to lessen its value in the hands of any person, or corporation, who might be a bidder. *Craig v. Zimmerman,* 87

Mo. 475; *Plum v. Studebaker Bros. & Co.*, 89 Mo. 162; *Sims v. Field*, 66 Mo. 111; *Funkhouser v. Lay*, 78 Mo. 458; *Stewart v. Perkins*, 110 Mo. 660; *McShane v. Moberly*, 79 Mo. 41.

*Spencer & Mosman* for respondent.

(1) The defendant company is bound to pay to plaintiff the rent due under the lease from plaintiff to the Kansas company, because: *First*, by the express agreement of the parties the several covenants, conditions, and stipulations contained in the lease were binding on the respective parties thereto, their successors and assigns, for the term of fifty years. *Second*. Where the parties mutually agree to bind their assigns, such assigns are bound by force of the language and evident intention of the parties. By accepting the deed from the Iowa company and from the master the defendant entered into a covenant to comply with the terms of the depot lease. *Hickey v. Lake Shore*, 36 N. E. Rep. 672; *Mygatt v. Coe*, 36 N. E. Rep. 870; *Perry v. Railroad*, 26 Atl. Rep. 829; *Ruddick v. Railroad*, 116 Mo. 25. But where the agreement does not mention assigns, then privity of estate is necessary in order to make the covenants binding on assigns. *Bronson v. Coffin*, 108 Mass. 180; *Dorsey v. Railroad*, 58 Ill. 65. *Third*. The depot property of the plaintiff, by force of their lease from it to the Kansas company, became appurtenant to the railway of the Chicago, Kansas and Nebraska company. *Central Trust Co. v. Kneeland*, 138 U. S. 419; *State Treasurer v. Railroad*, 28 N. J. L. 27; *Riddle v. Littlefield*, 53 N. H. 508; *Railroad v. Maffitt*, 94 Mo. 60; *Woodhull v. Rosenthal*, 61 N. Y. 390. *Fourth*. The general terms used in the lease from the Kansas company to the Iowa company, and in the deed from the Iowa company to the defendant, are

sufficient to transfer to defendant the right to use the facilities of the union depot company under that lease. *Central Trust Co. Case, supra; Ecker v. Railroad*, 8 Mo. App. 223; *Epperson v. Nickerson*, 78 Mo. 487; *Church v. Branch*, 120 Mo. 246; *Columbia Co. v. Railroad*, 60 Fed. Rep. 796. *Fifth.* The general terms in the deed of the master were sufficient to transfer to the defendant the rights acquired by the Kansas company to the use of the depot property (see case above cited), and by its purchase at the master's sale the defendant became the assignee of the lease. *Blackmore v. Boardman*, 28 Mo. 426. *Sixth.* That sale was an absolute assignment of the lease to the defendant, and it is liable for the rent. *Smith v. Brinker*, 17 Mo. 148; *Willi v. Dryden*, 52 Mo. 322. *Seventh.* No subsequent conveyance to, or purchase of the title by defendant, could change the relations which it had thus voluntarily assumed and entered into with the depot company. *Central Trust Co. v. Kneeland*, 138 U. S. 419. (2) *First.* The covenants of the lease made by the union depot company to the Kansas company are binding on all subsequent purchasers with notice from the Kansas company. *Joy v. St. Louis*, 138 U. S. 34; *Whitney v. Railroad*, 11 Gray, 364. *Second.* The several covenants, conditions, and stipulations of the lease, made by the Union Depot company to the Kansas company were for the benefit of the railway of the Kansas company and attached to that railway property as covenants running with said property and were necessarily binding upon every subsequent owner of the Kansas company's line. *Railroad v. Cosand*, 33 N. E. Rep. 251; *Bronson v. Coffin*, 108 Mass. 180; *Joy v. Railroad*, 138 U. S. 41. See cases cited in point 1, *supra; Chappell v. Railroad*, 24 Atl. Rep. 997. (3) The new matter pleaded in the reply was but a continuance of the

original cause of action and was proper. *Ward v. Davidson*, 89 Mo. 445.

BRACE, P. J.—This is an appeal from a judgment of the circuit court of Buchanan county in favor of the St. Joseph Union Depot Company, plaintiff, against the Chicago, Rock Island & Pacific Railway Company, defendant, for the sum of $7,767.76.

On the tenth day of April, 1888, the plaintiff, party of the first part, and the Chicago, Kansas and Nebraska Railway Company, party of the second part, entered into the following contract in writing:

"WHEREAS, The party of the first part has become incorporated and organized under the laws of the state of Missouri for the purpose of erecting, maintaining, and operating a union passenger depot in said city, and has erected upon a site chosen by said party of the first part a union depot; and

"WHEREAS, The said party of the second part desires to rent and occupy the same; and

"WHEREAS, For the protection of the parties hereto, it is important that the rights, duties, and liabilities of each in regard to the whole subject-matter of said depot, its appurtenances, use, care, control, rental, taxes, expenses, renewals, and repairs shall be stated and defined:

"*Now, Therefore,* In consideration of the premises, it is mutually agreed by and between the parties hereto as follows:

"First. Said party of the second part hereby agrees to pay to the said party of the first part, for the use of said depot, an annual rental amounting to its proportion of fifteeen thousand dollars; said sum being interest at ten per centum per annum upon the original bonded indebtedness of said party of the first part, amounting to one hundred and fifty thousand ($150,-

000) dollars; said proportion being found by dividing said sum of fifteen thousand ($15,000) equally to and between all the railroad companies using said union depot from time to time during the life of this contract; and in addition thereto, its proportion of the expenses of maintaining and operating ·said union depot, and of all repairs thereto, and all taxes thereon, said proportion being ascertained in like manner as proportion of rental as above set forth:

"*Provided*, That all rentals for the use of said depot and appurtenances derived from railroad companies not parties to contract with said first party, similar hereto, and all rentals and receipts for use of said depot and appurtenances from any source whatever, shall be applied as a credit upon and in reduction of the amount so as aforesaid to be paid as a rental by the several railroad companies using said union depot under contract with the said first party.

"Second. The amount of rental to be paid by any other railroad company not party to a contract with said first party, for use of said depot or appurtenances, shall be fixed by the board of directors of the party of the first part.

"Third. The· said party of the second part shall be assessed by the said party of the first part monthly, for its proportion of said rental and of said expenses in maintaining and operating said depot, and shall pay the same no later than the twenty-fifth day of the month succeeding that for which such· assessment is made; such payments shall be made by drafts drawn by the treasurer of the said party of the first part, and any failure on the part of said party of the second part to pay its assessment as aforesaid, at the option of the said party of the first part, shall be deemed a forfeiture of the right of said second party to the use of said depot.

"Fourth. The management of the depot, so far as relates to passenger service therein, and upon the grounds belonging thereto, shall be in charge of such officers and employees as ·shall from time to time be thought necessary and expedient by said party of the first part, and who shall be appointed and employed by said party of the first part for such purposes.

"Fifth. The union depot shall be used by said second party for all its passenger trains destined for, or departing from, St. Joseph.

"Sixth. The said·party of the first part shall at all times keep and maintain said depot, its grounds, yards, tracks, switches, and all appurtenances in good order and repair; and shall protect its depot buildings and improvements by adequate insurance against loss by fire; and the cost of such insurance shall be considered a part of the current expense of maintaining and operating said depot.

"Seventh. Payments, as herein provided, shall commence from the date when said second party commenced to use said union depot.

"Eighth. It is further agreed that the several covenants, conditions, and stipulations herein contained shall be mutually binding upon the respective parties hereto, their successors and assigns, for the term of fifty (50) years from and after the time when said depot was completed and ready for use and occupation, as aforesaid, unless this agreement shall be sooner determined by reason of any of the provisions hereinbefore or hereinafter contained.

"Ninth.        *        *        *        *        *"

· On the same day the plaintiff and the St. Joseph & Iowa Railroad Company entered into a like separate and independent contract upon precisely the same terms.

Prior to the making of these contracts, to wit, on

the fourteenth of May, 1886, the Chicago, Kansas & Nebraska Railway Company had mortgaged its entire property, corporate rights, and franchises by deed of trust in usual form conveying the same to the Metropolitan Trust Company of New York to secure bonds of the company, and on the next day thereafter, to wit, on the fifteenth of May, 1886, had leased its entire road and equipment, constructed and acquired, and to be constructed and acquired, to the St. Joseph & Iowa Railroad Company, for the term of nine hundred and ninety-nine years. By the terms of this lease the Kansas company was to complete its road and to turn it over to the Iowa company as fast as completed, free from all liens and incumbrances, except the mortgage mentioned above, the interest on which the Kansas company was to pay. In consideration of this lease the Iowa company agreed to pay to the Kansas company a sum equal to thirty per centum of the gross earnings which should be realized by it during the year for which such rental should become payable from the operation of all the railroads included in the lease.

After the making of said contracts between the plaintiff and the Chicago, Kansas & Nebraska Railway Company and the St. Joseph & Iowa Railroad Company, to wit, on the twenty-ninth of December, 1888, the St. Joseph & Iowa Company sold and conveyed by warranty deed its railway, together with all its rights, privileges and franchises, including its said lease of the railway of the Chicago, Kansas & Nebraska Company, to the defendant, and afterward, to wit, on the thirtieth day of April, 1891, the defendant by deed of that date, executed in pursuance of a sale made under a decree of foreclosure of said deed of trust to the Metropolitan Trust Company, acquired all the property, real, personal and mixed, of the Chicago, Kansas & Nebraska Company, together with all its rights, privileges and franchises.

On the thirtieth day of August, 1892, the plaintiff instituted this suit to recover from the defendant for the use of plaintiff's union depot by defendant's trains running over the Chicago, Kansas & Nebraska Railway during the months of August, September, October, November, and December, 1891, and January, February, March, and April, 1892, the sum of $4,800, claiming that defendant is liable therefor as the successor and assign of the said Chicago, Kansas & Nebraska Railway Company, under the contract of that company with plaintiff. The defendant, denying such liability, claims, by virtue of the contract between the plaintiff and the St. Joseph & Iowa Railroad Company, and as its successor, "the right to use said union depot station for all its passenger trains, including those purchased from the Chicago, Kansas & Nebraska Railway Company and running over the railway purchased by defendant from said company." The plaintiff by its reply to defendant's answer further claimed an additional amount for such use since the institution of the suit, which was allowed to the date of the trial in the judgment, and thus the issue to be determined is raised.

I. In March, 1880, the plaintiff was duly incorporated under the laws of this state "for the purpose of constructing, establishing, and maintaining a union station in the city of St. Joseph." Its board of directors consisted of the representatives of five railroad companies, in whose interest the corporation was organized, and who were the holders of its capital stock, and with whom the depot company afterward, on the second day of September, 1880, entered into a contract containing provisions like unto those hereinbefore set out in its contracts with the St. Joseph & Iowa Railway Company, and the Chicago, Kansas and Nebraska Company. The union station was thereafter

operated by the plaintiff, not for profit, but for the accommodation and benefit of these five railroad companies, and their successors, and such other companies as were admitted as members and stockholders, and made use of said depot for their passenger trains.

In 1885, the defendant owned and operated a line of railroad extending from Chicago through Altamont, Missouri, to points on the Missouri river, opposite to the cities of Leavenworth and Atchison, Kansas. Altamont was about fifty miles east from St. Joseph. In that year the St. Joseph & Iowa Railroad Company began the construction of a line of railroad from Altamont to Rushville in Buchanan County, Missouri, through St. Joseph; entered into a contract with the defendant company on the first day of July, 1885, establishing a traffic arrangement, whereby the railway of the St. Joseph & Iowa Company became a part of the defendant's system of railways for through traffic; and completed the construction of the same in the winter of that year. In the beginning of 1886, the Chicago, Kansas & Nebraska Railway Company began the construction of a railroad in Kansas, terminating on the west bank of the Missouri river opposite St. Joseph and during that and the succeeding year constructed and otherwise acquired considerable lines of railroad in Kansas and Nebraska, and on the nineteenth of August, 1886, secured from the St. Joseph & Grand Island Company a lease giving it the right to enter St. Joseph over the bridge of that company and thereafter the Kansas company by means of the tracks belonging to the bridge connected with the tracks of the St. Joseph & Iowa Company in St. Joseph, running over several hundred feet of the tracks of that company in reaching a connection with the union depot.

Such was the situation of the respective properties of the parties, present and prospective, when the mortgage of May 14, 1886, was made to the trust company, and the lease of May 15, 1886, aforesaid, was made by the Kansas company to the Iowa company, whereby the Kansas company's railway also became a part of defendant's system of railways for through traffic, about which time, to wit, on the first of May, 1886, the Kansas company and the Iowa company, together with another railroad company, were admitted as members and stockholders of the depot company, and a representative of each became a director thereof, both companies paying for their stock on the twenty-third of June, 1886. The Iowa company began paying for the use of the union depot in that month, and the Kansas company in November, 1886, when its trains first began to run in and out of the depot. The assessments against the Iowa company were paid by the Iowa company, the defendant, and the assessments against the Kansas company were paid upon vouchers made out against that company, and sent to its auditor at Topeka, from whose office checks were received therefor by the plaintiff, and under the terms of the lease were a proper charge against the lessee by whomsoever directly paid, and must have been so accounted for. These payments for the use of the depot continued to be made in behalf of these two companies up to the time of the making of the two written contracts of the tenth of April, 1888, aforesaid, and thereafter until the first day of August, 1891, when payment of the bills against the Kansas company were refused and ceased, leaving due and unpaid from that company, for the use of the depot from that date to the first day of November, 1892, the sum of $7,765.76, according to the contract of the Kansas company with the depot company.

During all this time the Iowa company and the

Kansas company were each represented in the directory of the depot company, and the defendant had the use and benefit of the union depot of the plaintiff for all its trains running in and out of St. Joseph, by virtue of its privity with those companies, and as the successor of each in the contracts and agreements made by them with the depot company. It never had any direct contract with the depot company, and if by its purchase of the property and franchises of the Iowa company, including its lease of the Kansas company's road and equipments, it would have the benefits of the contract made by either of those companies with the depot company, it ought in all fairness to take them subject to the obligations imposed thereby on each.

In view of the circumstances under which the independent, cotemporaneous contracts between the depot company and the Iowa company, and the depot company and the Kansas company, were made, and the relations existing between all the parties at the time, it would be absurd to claim that it was the intention of the parties that the Iowa company, which was then the lessee of the Kansas company, and in the interest of which both contracts were evidently made, was to have the use of the depot thereafter for the trains of the Kansas company, as well as for its own, for one rental. The making of the two contracts, cotemporaneously, providing for the payment of two rentals; and the payment of two rentals continuously thereafter, one for the trains of the Iowa road, and the other for the trains of the Kansas road, are entirely inconsistent with such an idea. To give the contract of the Iowa company with the depot company such a construction because by the fifth clause thereof it was required to use the union depot "for all its passenger trains destined for or departing from St. Joseph" would be to nullify, or at least ignore, the contract with the Kansas com-

pany, made at the same time, and which contained precisely the same clause; and *vice versa.*

It must be remembered that the trains which ran over the line of the Kansas company's road first made use of the depot facilities after the St. Joseph & Iowa company had taken possession of the Kansas road and was operating the same under its lease. The St. Joseph & Iowa company operated those trains. The Iowa company knew that the Kansas company was one of the stockholders in the depot company, and a lessee of the depot facilities. The application for membership in the depot company and lease of the depot facilities was made by the Iowa company and the Kansas company on the same day; their applications were accepted the same day; they were admitted on precisely the same terms; their contracts were dated and executed on the same day; and directors representing the respective companies sat in the board of the depot company at every subsequent meeting.

It knew at the time that it and the Kansas company made application to become shareholders in the depot company and lessees of this depot property, that it was the lessee of the Kansas company's line, and that the Kansas company would never use the facilities of the depot company. These two contracts must be read together in the light of the circumstances under which they were made, and of the peculiar relations existing between the parties at the time; and when so read, it can not be doubted but that it was the understanding of all the parties thereto, and interested therein, that the terms of the contract between the Iowa company and the depot company did not include, and were not intended to include, the right by that company to use the plaintiff's union depot for the trains of the Kansas company for the single rental

therein provided for, but that a like rental was to be paid for the use of the depot by the Kansas trains.

The subsequent action of the parties, including that of the defendant, after it had become the absolute owner of all the property of the Iowa company and of its lease of that of the Kansas company, demonstrates that such was the understanding of all the parties, for the rental provided for in the contract with the Kansas company, as well as that provided for in the contract with the Iowa company, continued to be paid either directly or indirectly by the defendant after it had acquired the absolute control of both roads, the same as before, up to the first of August, 1891, when for the first time it seems the defendant began to claim that it was entitled to the use of the union depot for its Kansas trains without paying therefor, under the contract of the Iowa company.

It would seem that the long previous action of the defendant and all the other parties to this contract ought to be a very significant answer to this claim, for, as was well said in *Whitehead v. Bank*, 2 W. & S. 175: "The business of a court and jury is to ascertain the meaning and intention of the parties in making an agreement, and to carry that into effect, if it is consistent with law. I know of no better mode of ascertaining this meaning than is shown if all parties acted on a particular meaning." A doctrine that has frequently received the approval of this court. *Patterson v. Camden*, 25 Mo. 22; *St. Louis Gaslight Co. v. St. Louis*, 46 Mo. 129; *Jones v. DeLassus*, 84 Mo. 545; *Scott v. Scott*, 95 Mo. 318.

But it is said that this right is given to the defendant by the terms of the Iowa company's contract under the ruling of this court upon a similar contract in *Union*

VOL. 131 mo—20

*Depot Company v. Railroad,* 113 Mo. 213.    In that case
the defendant (in that opinion called the Rock Island
company) was itself a member of the Kansas City
Union Depot company, entitled to the use of the union
depot by virtue of a contract similar to that existing
between the parties in this case; but neither the Iowa
company nor the Kansas company (in that opinion
called the Nebraska company) were members of, or had
any such contract with, that depot company, when the
defendant succeeded to the rights of those companies
by its purchase of the Iowa road; and, while it was
held in that case that the defendant, under its contract
with the depot company, had the right to the use of
the depot for the trains of the Iowa company, and of
the Kansas company, without paying additional rental
therefor, on the ground that the Rock Island company
was under no implied duty to the depot company
inconsistent with a right on its part to extend its line
by the purchase of the Nebraska company's property,
the Nebraska company being under no contract or
other obligation to the depot company or any of the
railroad companies, parties to the depot contract, to
use the depot or pay rent for such use, "and the Ne-
braska company and its lessee, the Iowa company,
having" the "right, as against the depot company and
the railroad companies, parties to the depot contract,
to quit the use of the depot at any time, and to con-
struct and use their own depot or station house," the
learned judge who wrote the opinion of the court was
careful, however, to further distinguish that case from
such an one as we now have under consideration, by
saying that "if the Rock Island company" (defendant
herein) "had purchased a road belonging to another
company, *a party to the contract,* the depot company
would not lose the rental which the selling party had
agreed to pay.    And this is true whether we regard the

contract of the selling company with the depot company as one running with the land in favor of the depot company or not. The sale of the road belonging to one company to another company, both being parties to the depot contract, would and could not affect the contract rights of the depot company. So, too, the depot company would not be deprived of any contract rights which it had with the Nebraska company at the time that company sold its property to the Rock Island company."

We think this case, when duly considered, instead of being an authority for the defendant's position, sustains the conclusion we have reached, that the plaintiff's contract with the Iowa company, a member of the union depot company, was not intended to, and did not, confer upon that company the right to use plaintiff's union depot for the trains of the Kansas company, also a member of the union depot company, with whom it made a like independent contract with the knowledge of the Iowa company, on the same day. It goes without saying that if the Iowa company did not have that right the defendant has not.

II. This disposes of the right claimed by the defendant under the contract of the Iowa company with the depot company, and brings us to the next question, its obligations, if any, under the contract of the Kansas company with the depot company; for this suit is brought to recover the rent reserved by that contract, which is in the nature of a lease for fifty years, for a certain rental to be ascertained and paid according to its terms.

Of course, defendant's obligations, if any, under that contract, would be those of the Iowa company, to ascertain which it is necessary to recur to the lease made by the Kansas company to the Iowa company on the fifteenth of May, 1886. When this lease was made,

as appears by its terms, the Kansas company had com-
menced the construction of five lines of railway in the
states of Kansas and Nebraska, described in the pre-
amble of the lease, the operation of which it desired to
secure in close connection with, and as a part of, the
St. Joseph & Iowa railroad, to the end that they might
constitute a part of the railway system of the Chicago,
Rock Island & Pacific Railway.    To accomplish this
purpose, the lease was made, whereby the Kansas com-
pany agreed to construct these several lines of railway
with reasonable dispatch and turn them over when so
completed to the Iowa company, and thereby imme-
diately leased to the Iowa company for nine hundred
and ninety-nine years "all of the railroad which is now,
or may hereafter be, owned by it (the Kansas company)
and extending over the lines described in the preamble,
together with all the rights, privileges, and franchises
of which it is now possessed, or which hereafter may
inure to it, with regard to said railroad or any exten-
sion thereof or branches therefrom,—all lands upon
which said railroads and their appurtenant structures
are or may be located, or which have been or may be
in any manner acquired for the use of such railways or
either of them, including all lands held in fee simple,
all right of way, depot and station grounds, yards, and
gravel pits, all main tracks, sidings and turnouts,
bridges, depots, stations, tanks, turntables, and other
structures of every nature and description, now erected
or which may hereafter be erected for the use of said
railroad; all machinery and tools and equipment on
said railroad, or in shops appurtenant thereto, and all
furniture and fixtures in all the depots, offices, and shops
appurtenant to said railroad, all leasehold interests in
other railroads, and all traffic and running arrange-
ments with other railway companies," and the Iowa
company agreed to pay the rental therefor hereinbefore

stated, the Kansas company to remain in possession of its several lines until they should be completed and accepted by the Iowa company.

This process of constructing, completing, and turning over by the Kansas company of its railway system to the Iowa company was going on when these two companies were admitted as members of the union depot company, were permitted to become stockholders thereof, commenced the use of its facilities for the trains of both roads, and entered into the contracts aforesaid. It can not, under the circumstances, be doubted but that the Kansas company's contract was made to carry out the purposes of its lease to the Iowa company, and that by the terms of that lease the right to use those facilities under said contract by payment of the rental therein provided for passed to the Iowa company, and its successor, the defendant company, was accepted by them, together with the corresponding obligation to pay such rental, by the continuous exercise of the right, and payment of the rent for years thereafter,—and that the defendant succeeding to the rights of the Iowa company by its purchase, must pay the price nominated in the contract as the condition for the exercise of those rights in plaintiff's property, so long as it enjoys them as vendee of the Iowa company. And this brings us to the next question in the case.

III. The petition made no mention of the mortgage by the Kansas company to the Metropolitan Trust Company, and while the answer recited the fact of the mortgage, its foreclosure, the sale and purchase at such sale by the defendant company, tendered no issue upon that fact, but on the contrary limited the issues by stating its claim specifically to be the right to use the union depot for the Kansas trains, "by virtue of the provisions of said contract between plaintiff and said St. Joseph & Iowa Railroad Company" and, therefore,

"it refuses to pay any sum on account of said contract between plaintiff and the Chicago, Kansas & Nebraska Railway Company." This was the only issue tried by the court below, and the only one the trial of which is before us for review, and the trial court having reached a correct conclusion upon that issue it is not necessary to consider the suggestion made in the argument of counsel, that the defendant by its purchase at the master's sale in the foreclosure proceeding acquired title paramount to the Iowa company's lease and to every other incumbrance or burden the Kansas company might seek to impose after the execution of the mortgage, further than to say, conceding this to be so, it having been found that the defendant had no right to the plaintiff's depot under the contract of the Iowa company for its Kansas trains, it had no right to use it at all for those trains unless it was under the contract of the Kansas company, either as the assign of that company through its purchase of the Iowa company's lease, or as purchaser under the mortgage of the Kansas company. If it claims the right as representative of the Iowa company, as we have seen it is liable for the rent reserved by plaintiff's contract with the Kansas company. If it claims the right as the representative of the Kansas company by its purchase under the mortgage antedating the lease of the Iowa company, it could only be entitled to it because of the fact that the mortgage had the effect of transferring the right to the use of the depot as after-acquired property of the Kansas company, and if so, then the defendant must take the right *cum onere*, and must pay the rental contracted for as the price of the privilege. *United States v. Railroad*, 12 Wall. 362; *Myer v. Car Company*, 102 U. S. 1. So that the judgment is for the right party, from any point of view.

IV.  It is contended that the judgment is excessive and erroneous for the reason that the plaintiff in its petition only claimed $4,800 rental for the use of its depot for the months of August, 1891, to April, 1892, both inclusive, and the judgment was for $7,767.76, the amount of the rental up to the first day of November, 1892.    The trial was commenced the seventeenth of November, 1892.  The date of the judgment does not appear from the abstract filed here, but it must have been on or after that date.    Before that date, issue was joined by a reply, in which the plaintiff claimed "that since the filing of the petition herein other and additional installments of rent, and of operating expenses had fallen due under said contract, amounting to the sum of $3,000 for which sum as well as the $4,800 mentioned in the petition it prays judgment."

It is expressly provided by our practice act that new facts which have occurred since the institution of the suit may be brought into the issue by answer or replication.    R. S. 1889, sec. 2063.  "The new matter here pleaded simply enlarged the extent of the relief, by stating a continuation of the same wrong, and was proper supplemental matter."    *Ward v. Davidson*, 89 Mo. *loc. cit.* 455.  We do not think the court committed error by including in the judgment the rental up to the first of November, 1892.    But even if this were error, no objection was made in the trial court to the judgment on this account, either in the motion for a new trial or in arrest, and the defendant can not now be heard to assign it here for reversal of the judgment. The judgment of the circuit court is affirmed.    All concur.