HOLLAND LAND AND LOAN COMPANY, Appellant, v. BERTONIA A. HOLLAND.—298 S. W. 39.

Division One, July 30, 1927.

1. **CONTRACT: Variance by Extrinsic Evidence: Subsequent Acts of Parties.** Where the reservation in the contract, by which the principal owner of the stock of a bank sold it to the other party, was the bank's entire

interest in lots, the extrinsic evidence should not be further considered for the purpose of showing that only a part of the whole was reserved. Acts done by the parties to a contract after its making tending to show an interpretation by them, or by one of them, at variance with its plain written terms, will not control, but the contract is to be construed as written. And particularly so, where the reservation was in favor of the party now long deceased, and there is no contention that either party misled the other to his disadvantage, and the bank ratified the contract the parties made for themselves.

**2. MONEY HAD AND RECEIVED: Action at Law: Equitable Principles.** An action for money had and received is one at law, but is governed by equitable principles. It is a flexible form of action, levying tribute upon equitable as well as strictly legal doctrines.

---

Corpus Juris-Cyc. References: **Contracts,** 13 C. J., Section 517, p. 549, n. 58. **Evidence,** 22 C. J., Section 1684, p. 1267, n. 59. **Money Received,** 41 C. J., Section 2, p. 28, n. 5; p. 29, n. 7; Section 79, p. 70, n. 98.

Transferred from Springfield Court of Appeals.

AFFIRMED.

*John T. Sturgis* for appellant.

(1) The defendant's equitable answer made this case triable in equity and this court will review the evidence, *de novo,* as well as the questions of law. Lewis v. Barnes, 272 Mo. 377; Claybrook v. Saulsberry, 204 S. W. 60. (2) This is not a suit for damages as for tort or conversion. It is a suit for money had and received by defendant which rightfully belongs to the plaintiff. One who sells and thereby deprives another of his property, real or personal, and receives the proceeds, can be held for the money so received in an action for money had and received. Ordinarily one cannot sell and convey land not his own and the owner is usually not injured by such conveyance. But where the real owner's title is not of record the one holding the apparent title may sell and convey a good title to an innocent purchaser. In such case the apparent owner even though selling in good faith receives money for property not his own and must account for same to the real owner. 39 Cyc. 176, 177; Morse v. Bates, 99 Mo. App. 560.; Picotte v. Mills, 200 Mo. App. 127; Waverly Timber Co. v. Cooperage Co., 112 Mo. 389; Tamm v. Kellogg, 49 Mo. 118; 27 Cyc. 854, 861; McAllister v. Reel, 53 Mo. App. 81. (3) When the plaintiff is only suing for the money received by defendant for property belonging to plaintiff the question of defendant's knowledge and intention of wrongdoing is of no importance. The fact that defendant acted under a bona-fide claim of right makes no difference. The gist of the action is that defendant has money

which properly should go to the plaintiff. Waverly Timber Co. v. Cooperage Co., 112 Mo. 389; Picotte v. Mills, 200 Mo. App. 127; Tamm v. Kellogg, 49 Mo. 118. (4) The defendant alleges that the deed from C. B. Holland to Holland Banking Company was not delivered. The burden was on defendant to prove the nondelivery and no such evidence was produced. Pitts v. Sheriff, 108 Mo. 110 (a) That a deed has been acknowledged and recorded at the time offered in evidence is prima-facie proof of delivery. 13 Cyc. 734, 567; McReynolds v. Grubb, 150 Mo. 332, 362; Llewellyn v. Butler, 186 Mo. App. 593. (b) The words written at the close of the deed and part thereof "Signed, Sealed and Delivered in the Presence of T. J. Gideon," is prima-facie proof of delivery. Hill v. McNichol, 80 Me. 209. (c) Where a deed, as here, is properly acknowledged, that is proof of its due execution, and proof of execution raises a presumption of delivery. 13 Cyc. 730-731; Fontaine v. Boatmen's Savings Inst., 55 Mo. 561. (d) The fact that the deed in question was found in the possession of the grantee, Holland Banking Company, from which it was obtained and put of record is proof of delivery. 13 Cyc. 563; Allen v. DeGroddt, 105 Mo. 456; Elsea v. Smith, 273 Mo. 410; Green v. Yarnell, 6 Mo. 326; Pitts v. Sheriff, 108 Mo. 115; Scott v. Scott, 95 Mo. 308; Rogers v. Cary, 47 Mo. 234. In Pitts v. Sheriff, supra, the court said: "Where a deed has been executed and acknowledged the possession of it by the grantee is presumptive evidence of its delivery." (e) The contract between T. B. Holland and W. B. Sanford of August, 1911, for sale of bank stock specifically recognizes the bank's ownership of an interest (one-third) in this Olive Street property. And that interest came only through the execution and delivery of the C. B. Holland deed. (5) The contract of August 19, 1911, between T. B. Holland and W. B. Sanford as individuals relating to sale of bank stock, even if covering the land in dispute, which we deny, cannot have the effect of divesting the title of the bank and conveying same to T. B. Holland, though Sanford thereby became the owner of the large majority of the stock. A corporation acts by authority of its board of directors and through its officers acting as such when duly authorized. No stockholder, however large his holdings may be, can act for or bind the corporation by his contract. 7 R. C. L. 530, 623, especially as to its land, p. 642; Jones v. Williams, 139 Mo. 24, 71; Hill v. Rich Hill Coal Co., 119 Mo. 29; Guaranty Mortgage Co. v. Delmar Realty Co., 254 S. W. 100; 14 A, C. J. 361. A contract between the stockholders to sell stock cannot be construed to be a contract of the corporation to sell its land unless the corporation ratifies same. Lead & Zinc Co. v. Land Co., 251 Mo. 735. The Holland-Sanford contract for sale of bank stock, even if valid, does not cover the land in dispute—the fifty-foot lot with the barn on it. It purports to reserve to T. B.

Holland, "the bank's entire interest in the Olive Street property known as the Townsend-Crawford property." What property that is must be left to extrinsic evidence. And both parties so recognized and introduced evidence to identify the property. Plaintiff contends that the property referred to as reserved to Holland is the seventy-three-foot vacant lot on Olive Street east of the one in controversy, since it is shown that in 1905 T. B. Holland obtained Townsend's interest in same by deed through McGregor and thereafter the property in controversy was severed from the vacant property and treated as a separate lot for taxation, the payment of rents, etc. The parties to the contract themselves placed such construction upon this contract, as covering only the vacant lot, in every way and by unequivocal acts. The court will follow the construction placed on the contract by the parties themselves. 9 Cyc. 588; Scott v. Scott, 95 Mo. 318; Patterson v. Camden, 25 Mo. 22; White v. Herringhausen, 275 Mo. 687; City of California v. Burke, 239 S. W. 832.

*Mann & Mann* and *W. D. Tatlow* for respondent.

(1) This is an action for money had and received, hence, an action at law and not in equity, and a general finding, as here, in favor of the respondent, if there is any evidence tending to support the finding is conclusive on this court. Brewer v. Dunham, 209 S. W. 573. Although it is an action at law, so far as the procedure is concerned, as to the substantive law it is an action in equity, or rather, it is controlled and governed by equitable principles, for the reason that it has been many times decided in this State that in order for the plaintiff to recover in such an action, it is not sufficient for it to show a mere legal title, but he is required to show in addition thereto, that the defendant has received money which in equity and good conscience, she ought to pay to the plaintiff. Such a showing is absolutely necessary to the right of recovery. Richardson v. Moffett-West Drug Co., 92 Mo. App. 515; Clifford Banking Co. v. Donovan Comm. Co., 195 Mo. 239; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558; Whitecotton v. Wilson, 197 S. W. 168; Stockman v. Allen, 160 Mo. App. 229. (2) The written contract between T. B. Holland and W. B. Sanford, they being at the time the owners of all the stock of the Holland Banking Company, by which Holland sold to Sanford his stock in the bank and all the real estate of the bank was disposed of thereby partly to Holland and Sanford jointly and partly to T. B. Holland individually, is conclusive against the right of the appellant to recover, as this contract gives the property in dispute to Holland, and is sufficient to convey the equitable and beneficial interest, even though not sufficient to convey the legal title to the property and prevents the recovery by the plaintiff, contrary

to. the contract in an action for money had and received for the pro-
ceeds of such property under the authorities supra. This is so, even
though the contract did not technically bind the bank for the reason
that no one but the bank itself could raise the objection. The bank
made no such objection, but recognized, ratified and confirmed the
contract and never afterwards made any claim to the property and
for the further reason that, while as a general rule a corporation is
a separate entity from the stockholders, this is a mere legal fiction,
and courts of equity will look beyond, and when equity requires it,
will consider such entity as identical with the constituent members
that compose it. United States v. United States Shoe Co., 234 Fed.
141; Smith v. Moore, 119 Fed. 689; McCaskle v. United States, 216 U.
S. 405; Cardo v. Adams, 231 Fed. 967; Sebree v. Cassville Railroad
Co., 212 S. W. 18. It has been very generally held that there may be
a division of the property of a corporation among stockholders with-
out the formality of a resolution of the board of directors declaring
a dividend. Spencer v. Lowe, 198 Fed. 961; Southwestern Co. v.
Martin, 57 Ark. 355; Central of Georgia Railroad v. Central Trust
Co., 135 Ga. 472; Grats & Company v. Calvert, 142 Pac. 569; Ratley
v. Clendenan, 232 Fed. 61; Smith v. Moore, 199 Fed. 689.    (3)    The
presumption of the delivery of a deed, arising from the possession
thereof by the grantee and the recording of same, has no application
to the deed of C. B. Holland to the bank, which conveyed a number
of tracts, that T. B. Holland, as the devisee of C. B. Holland, con-
veyed to other parties as the owner of the property, which can be ac-
counted for only on the theory that the bank was making no claim
to the property (in other words, the paper was not a deed) or on
the theory that T. B. Holland was, in fact, the Holland Bank. If
so, the question of delivery turns upon his intention and his acts
show that he did not intend the delivery of the deed. In other words,
he did not intend to accept it. The question of delivery, however, or
nondelivery of the deed, is not important, except as an answer to
appellant's legal title theory, which, in its last analysis, is unimpor-
tant, for the reason that the Holland-Sanford contract dominates and
controls the question, as to who is entitled to the property in con-
troversy, without regard to the legal title.    (4)    The rule as to the
admissibility of proof of extraneous facts and circumstances for the
purpose of removing a patent ambiguity in written instruments, is
that every fact may be proven to which it refers or may probably
have been intended to refer or which identifies any person or anything
mentioned in it, but it does not permit the introduction of parole evi-
dence as to what the parties intended, and it certainly does not render
competent one of the parties to so testify as to its meaning when the
other party to the contract is dead. Calloway v. Henderson, 130
Mo. 77. The description in the contract of the ''bank's entire inter-

est in the Olive Street property known as the Townsend and Crawford property" would not only be a good description in a deed, but would prevail over a particular description which conflicted therewith. Thompson v. Thompson, 115 Mo. 63. The description in the contract is in accordance with the custom that Mr. Holland followed in designating his property as shown by his will and the testimony of Mr. McDavid that he "spoke of his property in general terms, such as the McGregor-Noe Building, the Heer Building, the Woolworth Building, a certain Building on College Street, the Morrison Building."

LINDSAY, C.—This case is one which has been reassigned, and is a suit for money had and received by the defendant, upon a sale made by her of certain real estate which plaintiff claimed to own. The trial was before the court, without a jury. No declarations of law were asked or given.

The court gave judgment in favor of the defendant, and plaintiff's appeal went to the Springfield Court of Appeals, and was heard by that court. The case has been transferred to this court upon the request of one of the judges of the Court of Appeals, who was of the opinion that the holding of the majority, in affirmance of the judgment, was in conflict with certain decisions of this court. The facts and the issues made are treated at length in the opinions, of the majority upon the original hearing, and upon rehearing, and also in the dissenting opinion filed. The majority opinion epitomizes the issues made by the pleadings, and states the facts developed, as follows (274 S. W. 951):

"Plaintiff is a corporation and its cause of action is based on the alleged facts that on the ——— day of February, 1921, it was the legal owner and for a long time prior thereto had been the equitable owner of a one-third interest in a lot beginning on the south line of Olive Street, 123 feet east of the northwest corner of Lot 14, Block 7, Original Plat of Springfield, Missouri, at the northeast corner of a lot owned and occupied by McGregor-Noe Hardware Company: thence east 50 feet; thence south 117½ feet; thence west 50 feet to the east line of said McGregor-Noe lot; thence north to the beginning; otherwise described as an undivided one-third interest in the west 50 feet of the east 65½ feet of Lot 14, Block 7, Original Plat of Springfield, Missouri. That the title to this land had formerly been in C. B. Holland, but passed from him to the Holland Banking Company by quitclaim deed from him, December 13, 1900. That the bank conveyed to plaintiff March 5, 1921. That the deed to the bank was not recorded until March 2, 1921, and by reason of that deed not being of record, the defendant, who had asserted title to the one-third interest in the land owned by plaintiff, sold it to an innocent

purchaser, and plaintiff thereby lost the property. This suit is to re-
cover from defendant what she received for that property. There
is also a count asking for an accounting as to rents received by de-
fendant.

"Defendant denies plaintiff's title and asserts title in herself up
to the time that she sold it, and pleads laches and estoppel as a bar
to plaintiff's action. As to the rents received by defendant she pleads
the five-year Statute of Limitations as to part of the account. Plain-
tiff moved to strike out nearly all of the answer, but its motion was
overruled, and the cause then proceeded to trial.

"At the trial, it was admitted that C. B. Holland was the common
source of title to the one-third interest in the property described in
plaintiff's petition, and that he acquired title through the foreclosure
of a deed of trust executed by A. B. Crawford. It was also conceded
that the Townsend heirs owned the other two-thirds interest in the
same land. The plaintiff then offered in evidence a quitclaim deed
from C. B. Holland to the bank, dated December 13, 1900, recorded
March 2, 1921, which conveyed the land in controversy here and sev-
eral other tracts of land. It next offered a quitclaim deed from the
bank to plaintiff for the land in controversy, dated March 5, 1921,
and recorded March 7, 1921. It then offered a warranty deed from
defendant to George H. Townsend for the same land, dated February
25, 1921, and recorded March 7, 1921. This deed recites that the
grantor (defendant herein) is the 'residuary legatee of T. B. Holland.'
It also recites the receipt of $1200 as the consideration for the trans-
fer.

"Plaintiff then offered the files and record in a suit tried in the
Greene County Circuit Court at the May term, 1923, by this plain-
tiff against defendant and George H. Townsend to try title to this
land. This record shows that the evidence was heard, the suit
was then dismissed as to the defendant in this case, Bertonia A. Hol-
land, and judgment was then rendered against plaintiff, in favor of
George H. Townsend. The court held in that case that Townsend
was an innocent purchaser of the land for value and without any
knowledge of the unrecorded deed from C. B. Holland to the bank,
and refused to pass on any other questions in that suit. The plaintiff
then rested.

"The defendant then offered the will of C. B. Holland, dated June
21, 1895, and probated March 25, 1901, in which he devised all his
property to his son, T. B. Holland, in general terms, without par-
ticularly describing any property. Defendant next offered the will
of T. B. Holland, dated June 17, 1913, and probated August 9, 1913.
This will contains several clauses in which real estate was devised to
different persons, and in these clauses each tract of land disposed of
was described. He devised to his widow, this defendant, seven

tracts. To Mrs. Charles Holland, a daughter-in-law, one tract; to Charles Holland, a son, two tracts; to Mrs. Jarrett, a daughter, five tracts in Springfield and some land in Taney County. One of these tracts devised to Mrs. Jarrett adjoins the land in controversy here on the east side, and is described as follows: 'Beginning at a point 173 feet east of the northwest corner of Lot 14 in Block 7, Original Plat of Springfield, thence east 94 feet, south 117½ feet, west 94 feet, north to beginning, being 79 feet of Lot 13, and 15 feet of Lot 14 in Block 7, Springfield, Missouri, situated on Olive Street, west of Cumberland Presbyterian Church, reserving off of said tract for an alley twenty feet adjoining the Townsend property, and running the full length north and south of the above-described tract.' To Bertha Simmons, a daughter, three tracts. To Grady Holland Sanford, a grandson, one tract. The eleventh clause in the will gives the rest and residue of his estate of whatever kind and wherever situated to his wife, Bertonia A. Holland, the defendant in this case. The defendant then offered several deeds, executed by T. B. Holland, to various parties for land described in the deed from C. B. Holland to the bank, to show that T. B. Holland conveyed these lands as his own after the death of his father, C. B. Holland, but did not convey the fifty feet involved in this suit.

"Defendant then offered a warranty deed from T. B. Holland and the Townsend heirs to Arch McGregor, dated April 8, 1905, for ninety-four feet on Olive Street adjoining the fifty-foot lot in controversy on the east, and also a quitclaim deed from Arch McGregor to T. B. Holland for this same land, dated May 24, 1905. The latter deed was excluded on objection of plaintiff, but was later offered by plaintiff and admitted.

"Defendant then offered a written contract between T. B. Holland and W. B. Sanford, dated August 26, 1911, as follows:

" 'Whereas, I, T. B. Holland, have this day executed to W. B. Sanford an option to buy from me within thirty days from this date 940 shares of stock of the capital stock in Holland Banking Company of Springfield, Missouri, for the price and sum of $200 per share, or a total of $188,000 in cash.

" 'Now, therefore, it is agreed and understood by both parties hereto that in the event said purchase price is paid within time specified, that said sale is to carry with it the good will of said banking business, and is to also include the use of the corporate name, and is to be full purchase price for capital, surplus, undivided profits, and profit and loss account, same to include all assets of every kind and nature belonging to said bank *except the real estate.* (Italics are ours.)

" 'All of said real estate is to be sold to said Holland and Sanford jointly by said bank for the sum of $1738.30, the sum at which it

is now carried on said bank books and one-half of purchase price, to be paid by each of said parties.

" 'It is also agreed and understood that the said Holland is to remain a director and president of said bank without further remuneration or salary for such time as may be mutually agreed upon. And after said Holland retires he is not to use or allow his name to be used in connection with any other bank in Springfield, Missouri.

" ' (Signed) T. B. HOLLAND,
" 'W. B. SANFORD.

" 'The said T. B. Holland reserves to himself and for his own use the bank's entire interest in the Olive Street property known as the Townsend and Crawford property.

" 'Also the property on Phelps Avenue known as the Baxter property, and purchased at the Matilda J. Weaver bankruptcy sale, it being occupied at the present time by Minta Lair and additional house by other parties. Said property as a whole fronts 108 feet more or less on Phelps Avenue, and is about 140 or 150 feet on Grant Street.

" ' (Signed) W. B. SANFORD.'

"The transfer of stock was made as provided in the contract, and the $1738.30 paid to the bank, but no deed to any land was made by the bank to Holland and Sanford.

"Defendant then offered a quitclaim deed from the bank to the Holland Land & Loan Company, dated December 28, 1912. This deed covered a large amount of property, but only contained two lots that were included in the deed from C. B. Holland to the bank, and did not include the land in controversy here. We find a statement in the record here that the evidence shows that the Holland Land & Loan Company was organized in 1912 for the purpose of taking over the land of Holland and Sanford, each of them owning one-half of the capital stock, and that the land belonging to the bank was then conveyed to it. Defendant then offered a deed from Lemuel L. Bigbee to C. B. Holland, dated May 4, 1869, conveying all of Lots 13 and 14, Block 7, Original Plat of Springfield, and a deed from Holland to A. B. Crawford, W. M. Townsend, and W. N. Townsend, dated March 15, 1887, conveying 150 feet on the south side of Olive Street in Springfield, Missouri, which covers the land in controversy and other land adjoining it on the east. Defendant then offered deed of trust by Crawford on a one-third interest in this land and its foreclosure and purchase by C. B. Holland. These deeds were offered to show what the Townsend-Crawford property was as mentioned in the contract between T. B. Holland and W. B. Sanford, wherein it is recited that Mr. Holland reserves to himself the property known as the Townsend and Crawford property. All of these deeds offered by defendant were objected to by plaintiff on the ground that they did

not convey the land in controversy, and were immaterial to any issue involved in this case. This objection was overruled, and, we think, correctly so.

"The Holland Bank was a private bank owned by C. B. Holland and his son T. B. Holland prior to 1896. It was then incorporated for $100,000, and all of the stock except sixty shares, presumably of the par value of $6,000, was owned by the two Hollands. The sixty shares were then owned by W. B. Sanford. C. B. Holland died in 1901, and his stock went to his son T. B. Holland. T. B. Holland then owned 940 shares, and W. B. Sanford 60 shares, the two together owning all the stock in the bank. This seems to have continued until 1911, when Sanford purchased Holland's 940 shares of stock, and thereby became the owner of all the stock. How long he retained it does not clearly appear.

"It was admitted that defendant paid the taxes on the land in controversy for 1913, and for each year thereafter until she sold to Mr. Townsend. Stanley C. Booth, treasurer of McGregor-Noe Hardware Company, testified that the property in controversy has a warehouse or barn on it, which their company rented. Prior to the death of T. B. Holland, the rent was paid to him. He died in July, 1913. For August, 1913, the rent was paid to the Holland Bank. From that time until they moved out, December 31, 1920, two-thirds of the rent was paid to Townsend, and one-third to Mrs. Holland. The rent was $33.33 per month, and paid monthly. It was admitted that at the death of T. B. Holland the stock in the Holland Land & Loan Company was owned in equal parts by T. B. Holland and W. B. Sanford, except one share to Mr. McDavid, which he held in order to qualify him to serve on the board of directors. T. B. Holland by his will transferred his shares to Grady Sanford, and, after Holland's death in 1913 to the time of the trial, the stock, except one share, was held by W. B. Sanford and his son Grady Sanford.

"George H. Townsend testified that he bought the land from Mrs. Holland, had an abstract of title, and had it examined by an attorney, and had no notice of any outstanding title or claim. He paid Mrs. Holland $1,200.

"Mr. Cowden, attorney, testified that he was consulted by an officer of the Holland Bank before the bank made the deed to plaintiff. This officer of the bank told him the bank had no interest in the property, but Mr. W. B. Sanford had asked that the bank make a quitclaim deed to the Holland Land & Loan Company. Mr. Cowden told the party that if the bank had no interest in the property, it would be all right to make a quitclaim deed as requested. The deed was then executed.

"Mrs. Holland, the defendant, testified that she knew nothing of the unrecorded deed from C. B. Holland to the bank until it was filed for record March 5, 1921. Defendant then rested.

"The plaintiff then offered testimony as follows:

"Harry Nelson testified that he had been connected with the Holland Bank for twenty-seven years. It was first a private bank under the name of C. B. Holland & Son, and was afterward incorporated. Was with the Holland Bank when T. B. Holland sold his stock to W. B. Sanford. Was note teller. The money that was collected by the bank passed through his hands. 'I remember about the payment of rent on this brick building next to the McGregor-Noe Hardware store owned partly by the Townsend heirs. I used to receive the check from that company. The bank kept no rent account, but I have the book in which the endorsements were made. It was just entered as rent paid once a month along with other items of earnings of the bank. It was usually paid the last day of the month, one-third to the bank, and two-thirds to the Townsends. The amount was $33.33 per month. In October, 1911, one-third of it went to the bank, and two-thirds to Townsend. I have several months along there. The last item is December, 1911, and that is the last that appears to have gone to the bank. The money was paid to the bank before being divided. It was then divided as I have stated. I do not know how far back that extended, but it was handled that way for a considerable time. My records show the same amount for January, 1912, but both amounts were deposited. It would not go through my department, because it was no longer coming to the bank. My recollection is, that after that, one-third was deposited to the Holland Land & Loan Company, and two-thirds still went to Townsend. The bank books show that this rent never went to the credit of the bank after December, 1911. At the time T. B. Holland sold his bank stock to W. B. Sanford, he was president, and Sanford cashier. Sanford then became president, and Mr. Mitchell cashier. That continued until the consolidation with the State Savings Bank, and then Mr. Ferguson became president. Sanford went out of the bank three or four years ago. This $11.11, one-third the rent, was deposited to the bank, and went into its earnings the same as interest or anything else.' Afterward, recalled, he stated that he had looked the matter up, and that one-third the rent for 1911 went to the bank; for 1912, it went to Holland and Sanford; January, 1913, went to Holland Land & Loan Company.

"Guy S. Mitchell testified: 'I have been connected with the Holland Bank since 1891; am familiar with the books of the bank. Have traced this rent account and find for 1911, one-third the rent went to the credit of the bank, as part of its earnings, and two-thirds to Townsend. In 1912, the one-third went to Holland and Sanford.

317 Mo. Sup.—61.

The Holland Land & Loan Company was formed and began business about January 1, 1913. The account of Holland and Sanford was then transferred to the Holland Land & Loan Company, and one-third the rent paid to it from January 1, 1913, until the death of T. B. Holland in July, 1913. I looked after the payment of the taxes for the bank, and also for T. B. Holland. This property was first listed for taxes as a one-third interest in 142 feet on Olive Street. This included the land in controversy and the vacant property next to the Presbyterian Church. It was divided for purposes of taxation December 1, 1905. The bank then paid the taxes on this fifty feet. The east part was transferred to T. B. Holland, and he paid on it. This continued to December, 1912. This Olive Street lot was known as the Townsend-Crawford lot, but General (C. B.) Holland got his title through foreclosure on Crawford. The other two-thirds was owned by Townsend. T. B. Holland carried an account in the bank. I never knew of his making any objection to these rents being credited to the partnership account instead of to his private account. He was fairly active in the bank in 1912. The first list I made of property for taxes was in 1903. From then until 1905, the bank paid on all the Olive Street property. It was then divided, and the bank paid on the west fifty feet up to 1912, and T. B. Holland on the other part. Mr. Holland was a very close business man, and kept close watch on his rents. He was careful about paying his taxes.' This witness then identified several deposit slips. Two of these, Exhibits H and I, are in the handwriting of T. B. Holland. Exhibit H is dated December 30th, but the year is not given. The items are as follows:

"Checks as follows:............................$383.33
"Barn ...................................... 33.33
                                            ————————
                                            $350.00

"McGregor-Noe for December rent
                              "Deposited by
                              "(Signed) T. B. HOLLAND.

"Exhibit I is dated April 30th, but year not given, and has the following:

"Checks as follows:............................$383.33
"Barn ...................................... 33.33
                                            ————————
                                            $350.00

"McGregor-Noe
                              "Deposited by
                              "(Signed) T. B. HOLLAND.

"This has the date April 30, 1912, stamped upon it. Three other deposit slips were offered; one of these, dated April 30, 1912, shows $11.11 deposited by Holland and Sanford, and marked 'Barn Rent.'

This is not in the handwriting of T. B. Holland.  Another dated May 31, 1912, shows to be deposited by T. B. Holland, but is not in his handwriting, and has the following:

"Checks as follows: ...........................$383.33
"Less .................................... 33.33
                                        _____
                                         $350.00

"McGregor-Noe
"Another of May 31, 1912, has the following:
"Checks as follows: ...........................$33.33
"W. B. Townsend ........................... 22.22
                                        _____
                                          $11.11
"McGregor-Noe
"Deposited by Holland and Sanford.

"Grady Sanford corroborated Mr. Mitchell as to the payments of rent on the barn on the land in controversy, and identified a detailed statement which shows the deposit of $11.11 each month of the year 1912 in the bank to the credit of Holland and Sanford, and $11.11 each month of 1913 up to and including August to the credit of the Holland Land & Loan Company.  He also testified that taxes on the fifty feet for 1911 and 1912 were paid by the bank.

"F. M. McDavid, attorney, testified that he wrote a will for T. B. Holland dated February 19, 1913.  It was written from date furnished by Mr. Holland, who gave the name and general description of each tract of land to be disposed of.  Mr. McDavid secured the legal description of these various tracts, and went over them with Mr. Holland, and he did not mention any other real estate.  The real estate described in the list was grouped into certain divisions, and then Mr. Holland went over them carefully and made some changes, such as taking one tract out of one division and putting it into another.  He finally expressed himself satisfied, and the will was then drawn.  Mr. Holland spoke of the vacant lot given to Mrs. Jarrett, and mentioned a reason for giving it to her.  He did not mention the fifty-foot lot with the barn on it.  That will contained a residuary clause making his wife, the defendant in this case, the residuary legatee.

"W. D. Tatlow, attorney, testified that he wrote the last will of Mr. Holland, which was drawn from the one prepared by Mr. McDavid, and changes were made as indicated by notations on the margin of his former will.

"W. B. Sanford corroborated the other witnesses as to the collection of rents; also stated that the deed from C. B. Holland to the bank was kept in the bank, and he had known of its existence from the time of its execution.  Plaintiff offered to show by this witness

that the land held in the name of Holland was acquired by the bank in the banking business, and in fact belonged to the bank, but the title was taken in the name of Holland for convenience, and that, shortly before his death, he made deeds to the bank for the purpose of vesting the legal title in the bank, and that when the land was afterwards sold, the bank got the proceeds. The objection to this testimony on the ground that C. B. Holland was now dead was sustained.''

After statement of the foregoing, it was observed in the majority opinion that full details of the evidence had been given, because of plaintiff's insistence that the construction given to the contract of August 26, 1911, by T. B. Holland and W. B. Sanford, as shown by their acts done after the making of that contract, was to be regarded as settling the meaning of that contract, and therefore the case was to be determined upon the weight of the evidence on that point. There is in the briefs no little discussion of the nature of the action, as made by the pleadings, whether one at law or in equity, and whether the weight of the evidence is to be passed upon here; but the real question, discussed by counsel, decisive of the case, is the meaning to be given to the contract, and whether it is ambiguous. It is not in dispute that at one time the Olive Street property mentioned, spoken of as the Townsend and Crawford property, was a tract which extended east and west 144 feet. It is not in dispute either that later, for purposes of taxation, it was regarded as two tracts, the east one extending ninety-four feet, and the other, the tract here directly involved, extending fifty feet, from east to west. The ninety-four-foot tract is the one mentioned in the will of T. B. Holland as given to his daughter Mrs. Jarrett, and defendant claims the one-third interest in the fifty-foot tract passed to her by the residuary clause. The discussion of counsel and the division of opinion by the judges of the Court of Appeals, turns upon the question whether the reservation in the contract of August 26, 1911, between T. B. Holland and W. B. Sanford, referred to the fifty-foot tract in controversy, or to the whole 144 feet; or, as plaintiff contends, referred only to the ninety-four-foot tract. Passing those questions for the time, it seems desirable further to incorporate herein certain other statements contained in the majority opinion setting forth the facts, and summarizing the various transactions and acts of the parties concerned, and the circumstances existing before and after the making of the contract mentioned. To that end we take from the majority opinion the following:

''The transactions directly involved are intimately connected with matters which occurred so long ago, and the two men who knew all about the whole matter, to-wit, C. B. Holland and T. B. Holland, were both dead before this case was tried. Plaintiff's case rested primarily on the following facts: The common source of title to

the real estate involved, to-wit, the west fifty feet of what is called the Crawford and Townsend property, was C. B. Holland. C. B. Holland executed a quitclaim deed to this and other property to the Holland Banking Company, a corporation, on December 13, 1900. This deed was recorded March 2, 1921. The bank executed a quitclaim deed to plaintiff March 5, 1921. This deed was recorded March 7, 1921. This constituted plaintiff's chain of title to the land involved. Then to show its right to recover from defendant the amount sued for, plaintiff introduced a warranty deed from defendant to George H. Townsend purporting to convey the same land for a consideration of $1200. This was followed by proof that plaintiff had brought suit against defendant and Townsend to try title to this land, and, after the evidence was heard, that suit was dismissed as to defendant. Judgment went against plaintiff and in favor of Townsend, based on the fact that Townsend was an innocent purchaser for value without notice of the unrecorded deed from C. B. Holland to the bank. The court did not, in that case, pass upon any other question.

"The other testimony offered, partly by defendant and partly by plaintiff, establishes the following facts: The Holland Banking Company was started many years ago as a private bank by C. B. Holland and his son, T. B. Holland. In 1896, it was incorporated with a capital of $100,000. The shareholders were then C. B. Holland and his son, T. B. Holland and W. B. Sanford. Mr. Sanford owned sixty shares, and the two Hollands owned 940 shares. C. B. Holland died in 1901 and left all his property by will to his son, T. B. Holland. Then T. B. Holland owned 940 shares of the bank stock, and W. B. Sanford sixty shares. This continued until August 26, 1911, when W. B. Sanford purchased the 940 shares of stock then owned by T. B. Holland, and by that purchase became the sole owner of the bank. This case was tried in July, 1924, and it was shown that about three years prior thereto the Holland Bank consolidated with the State Savings Bank, and Mr. Sanford then went out of the bank. We note here that this bank, while incorporated, was always practically owned and controlled by C. B. Holland and T. B. Holland until the death of C. B. Holland, and then by T. B. Holland until 1911, and after that by W. B. Sanford until probably some time in 1921. The fact that the Hollands controlled the bank all these years until 1911 and then Sanford controlled it alone until 1921 should be kept in mind while considering other testimony.

"Looking to the dealings of the parties and the bank with the property involved here, we find the following: The tract of land spoken of as the Townsend and Crawford property originally had a front of 144 feet on the south side of Olive Street in the city of Springfield, Missouri. Crawford owned an undivided one-third in-

terest, and Townsend owned the other two-thirds interest. Crawford executed a deed of trust on his one-third interest in the land to T. B. Holland, trustee for C. B. Holland. This deed of trust was foreclosed, and C. B. Holland became the owner of that one-third interest in the land. Afterward, in 1900, C. B. Holland executed a quitclaim deed to the bank for a large amount of real estate, and all of this Townsend and Crawford tract was included. This deed was not recorded until 1921, long after both the Hollands had died, and their interest in the bank had passed to other parties. C. B. Holland died in 1901, and left all his property to his son, T. B Holland. T. B. Holland then executed, at various times, deeds to different parties disposing of the lands described in the deed from C. B. Holland to the bank, but whether he claimed to hold title thereto under his father's will or because he regarded himself as the owner of the bank, he then owning 940 of the 1,000 shares of stock in the bank, or whether he and Sanford, the two owning all the stock of the bank and composing its board of directors, acting by common consent, and knowing that the record title to all the land was then in T. B. Holland, withheld the deed to the bank from the record and permitted T. B. Holland to execute the deeds for the bank, does not directly appear. One of these deeds was executed April 8, 1905, in which he was joined by the Townsend heirs, and conveyed the east ninety-four feet of the 144-foot frontage on Olive Street in Springfield, and spoken of as the Townsend and Crawford property, to Arch McGregor. This deed was offered by defendant, and its introduction was followed by an offer by defendant of a deed dated May 24, 1905, from Arch McGregor to T. B. Holland, for the same ninety-four feet conveyed in the deed to McGregor. On objection of plaintiff, this last deed was excluded, but it was later offered by plaintiff and admitted. After the execution of the deed to McGregor and his deed to T. B. Holland in 1905 the east ninety-four feet and the west fifty feet of the Townsend and Crawford property were treated separately. There can be no question but that T. B. Holland treated the east ninety-four feet of this tract as his own from 1905 until his death. He paid the taxes on it, and in his last will specifically devised it. The contention of defendant is that T. B. Holland was also owner of a one-third interest in the west fifty feet of this tract, the land involved here, under the will of C. B. Holland, and that the same passed to defendant as residuary legatee under the will of T. B. Holland. The fifty feet involved here had a brick barn and warehouse on it, and was rented. The other ninety-four feet immediately east of this fifty feet was vacant. Prior to 1905 the bank collected the rent and paid the taxes on the whole tract. From 1905 to 1911, the bank continued to receive the rent and pay the taxes on the fifty feet, and T. B. Holland paid the taxes on the ninety-four feet. In August, 1911, T. B. Hol-

land sold his interest in the bank to W. B. Sanford by written contract to be presently discussed. The bank paid the taxes on the fifty feet in 1912. The rents went to Holland and Sanford during 1912. Part of this rent was paid to T. B. Holland, and he deposited it in the bank to the credit of Holland and Sanford, the same parties who by the contract of August 26, 1911, were to purchase the real estate then belonging to the bank. The Holland Land & Loan Company, the plaintiff in this case, was incorporated in 1912, and began business about January 1, 1913. The rents went to it in 1913 until the death of T. B. Holland in July, and after that they were collected by his widow, the residuary legatee under his will, and the defendant in this case. She continued to collect the rent and pay the taxes until she sold to Townsend in 1921.''

The effect of the contract between T. B. Holland and W. B. Sanford, and particularly of the reservation made by the former is the major question in the case. To that subject is devoted most of the attention of counsel and of the judges of the Court of Appeals.

There is much discussion of the acts of the parties to the contract, done after its making. Preliminary to that, it is urged that the reservation clause of the contract is ambiguous; that therefore the acts of the parties done after the making must be considered in ascertaining its meaning; and finally, that if these subsequent acts, particularly those of T. B. Holland, be considered along with his prior acts, the conclusion is enforced that the reservation included only the ninety-four-foot strip. For convenience we use the summary of facts shown concerning the acts of T. B. Holland, both prior and subsequent to the making of the contract, as given in the dissenting opinion, and forming the basis of the conclusion therein announced that the reservation included no more than the ninety-four-foot strip. The same is as follows: ''(1)   After May 24, 1905, when McGregor conveyed to T. B. Holland the east ninety-four feet, the two tracts—the fifty feet and the ninety-four feet—were treated by Holland and the bank as separate tracts; (2) the taxes on the ninety-four feet were paid by T. B. Holland, and the taxes on the one-third interest in the fifty feet were paid by the bank; (3) after May 24, 1905, the rents on the one-third interest in the fifty feet were paid to the bank until August 26, 1911, the date of the Holland-Sanford contract; (4) after August 26, 1911, the rents on said interest were, until Holland's death, paid to the partnership of Holland and Sanford, and to plaintiff, Holland Land & Loan Company; (5) T. B. Holland in two instances, April 30, and December 30, 1912, personally collected the rent on the one-third interest in the fifty feet, and in his own handwriting deposited the collection to the account of Holland and Sanford; (6) when T. B. Holland made his will he specifically described and de-

vised the ninety-four feet, but did not devise the one-third interest in the fifty feet.''

The plaintiff's case is founded upon the theory that the reservation in the contract between W. B. Sanford and T. B. Holland had reference to the ninety-four-foot tract only. After careful consideration of all the evidence, the contentions of counsel and the diverse views in the majority and dissenting opinions, we have reached the conclusion it may reasonably be held that the reservation applied to both the fifty-foot tract and the ninety-four-foot tract, or conjunctively, to the whole tract of 144 feet. We are driven to this conclusion by certain facts about which there is no dispute in the evidence. First, it is clear that the term ''Townsend and Crawford property'' was a term which the parties were wont to apply to the whole of the property; and next that the bank, in its corporate capacity at the time the contract was made, had an undivided one-third interest in the whole tract of 144 feet. The reservation was of the ''bank's *entire* interest in the property'' so known. If we go beyond the contract itself, and the circumstances existing at the time it was made, into all the evidence of subsequent conduct of the parties, we are in a field of conjectures, and the decision becomes dependent upon inferences not conclusive either way. When the contract was made, T. B. Holland and W. B. Sanford were dealing with the real estate in their capacity as sole owners of the stock of the bank. By the contract they made a segregation of all real estate, taking it to themselves jointly for the sum of $1,738.30, the sum at which it was then carried on the books of the bank. Next, by the reservation signed by Mr. Sanford, Mr. Holland reserved to himself and for his own use out of this real estate, ''The bank's *entire* interest in the Olive Street property, known as the Townsend and Crawford property.'' By the terms of the contract itself they were dealing with all the property in which the bank had any interest, and T. B. Holland was reserving to himself the entire interest of the bank in the property ''known'' as the Townsend and Crawford property. At the time the contract was made, T. B. Holland had no better title to the one-third interest of the bank in the ninety-four-foot tract, than he had in the one-third interest of the bank in the fifty-foot tract. This much is conceded by counsel for plaintiff. The question presented is one of identification of the property affected by the reservation. The description in the reservation was not ambiguous merely because inquiry was necessary to be made, and extrinsic evidence given to point out the property known as the Townsend property. Such identification could be made and shown. [Calloway v. Henderson, 130 Mo. 77; Turner v. Dixon, 150 Mo. 416.] Did the circumstances shown to exist at the time make the description equivocal? There was a reason why after 1905, a division for the purpose of payment of taxes might be desirable. In

that year Mr. Holland had acquired the two-thirds interest of the Townsends in the ninety-four-foot part of the whole tract, but the Townsends retained their two-thirds interest in the remaining fifty feet, and the bank's interest in the whole remained as before. The fifty-foot strip was improved, rental property; the ninety-four-foot strip was vacant. Under plaintiff's theory, the bank had an interest in the ninety-four-foot tract, because plaintiff claims that the interest in that tract was the only interest then reserved by T. B. Holland, and it had an interest in the fifty-foot tract, because it is the interest in that tract which the plaintiff claims now under his quitclaim deed from the bank. When the extrinsic testimony has gone far enough to show that there was a tract of 144 feet which was always referred to as the Townsend and Crawford property; that the bank had an undivided interest in the whole of this property, and the reservation as written was of the bank's entire interest, then we think the extrinsic testimony should not be farther considered for the purpose of showing that the reference in the reservation was to only a part of the whole. That testimony tends as much to contradict as it does to explain. Acts done by the parties to a contract after its making tending to show an interpretation by them or by one of them at variance with the plain terms written in the contract, will not control; but the contract is to be construed as written. [Meissner v. Standard Ry. Equipment Co., 211 Mo. 112; Webb-Kunze Const. Co. v. Gilsonite Const. Co., 281 Mo. 629; Laughlin v. Joplin, 161 Mo. App. 161; Bottom Produce Co. v. Olsen, 188 Mo. App. 181.] It is not urged here that the contention of either party misled the other to his disadvantage.

The bank ratified the contract. The bank and T. B. Holland conveyed the real estate affected by the contract, except the Townsend and Crawford property, in December, 1912. The omission of the Townsend and Crawford property from those deeds was indicative of ratification, not only by the bank, but by W. B. Sanford and T. B. Holland, of the reservation as expressed in the contract. Sixteen months after the date of the contract and reservation, the property, other than the Townsend and Crawford property, was conveyed by the bank and by T. B. Holland to the plaintiff company. Mr. Sanford testified he knew of the existence of the deed made by C. B. Holland in 1900, from the time of its execution. As a result of the contract made in 1911, he became the owner of all the stock of the bank and was, in effect, the bank itself. But there was no conveyance by the bank of the fifty-foot strip in controversy, which was included in the old deed made by C. B. Holland to the bank; and, that deed lying unrecorded, there was no deed made by T. B. Holland in the capacity of sole devisee under his father's will. If the matters subsequent to the contract be looked at they tend as much, to our minds, to throw into doubt and conjecture the construction of the reservation

as to clear it up. It is true that T. B. Holland, during the two years of his life following the making of the contract, turned over, or permitted to be turned over to Holland and Sanford, one-third of the monthly rental of the fifty-foot tract, but it is also true that W. B. Sanford, the other party to the contract with the knowledge of the circumstances, and without protest, for eight years following the death of T. B. Holland, permitted the defendant to collect the rent and pay the taxes. During that time the deed of C. B. Holland to the bank of which he had knowledge, remained unrecorded, and the bank of which he was for a long time sole owner, took no action. It is true that T. B. Holland specifically devised the ninety-four-foot tract to Mrs. Jarrett, and did not specifically devise the fifty-foot tract. In his devise to Mrs. Jarrett, he reserved twenty feet off the side of the ninety-four-foot tract as an alley "adjoining," as he said, "the Townsend property" which, as we understand it, referred to the fifty-foot strip in which the Townsends had the two-thirds interest. If he regarded himself as owning only the ninety-four-foot tract, no reason is readily seen why, by his will, he should have established on that tract an alley upon which the fifty-foot tract would abut. If he reserved an interest in the whole to himself, the fixing of an alley upon the part specifically devised is more readily understood. The evidence does not show what property owned by T. B. Holland was not specifically devised.

Upon the vital question of what was included in the reservation in the contract, the trial court had within view all the testimony, and drew its own inferences as to facts. The finding was general. Counsel discuss somewhat the question whether in this appeal the action is to be considered as one at law, or one in equity. The action for money had and received is one at law, but is governed by equitable principles. 42 Corpus Juris, page 28: "The action for money had and received has always been one favored in the law, and the tendency is to widen its scope—it being a flexible form of action, levying tribute on equitable, as well as strictly legal doctrines; so that, it has become axiomatic that the action lies where 'the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff.' "

It is not claimed at the time defendant conveyed to Townsend in 1921, she knew of the existence of the deed from C. B. Holland to the bank, or knew of the reservation made in the contract between W. B. Sanford and T. B. Holland. Her good faith in that transaction does not of itself constitute a defense. The claim of plaintiff is derived from the bank. At the time the bank made its deed of quitclaim to plaintiff, the title to the land was vested in Townsend as an innocent purchaser. If the land in controversy was a part of the lands of the bank, carried on the books at the sum stated in the contract,

then, whether the reservation by T. B. Holland included the interest in the whole or in only a part, the bank received the consideration stated in that contract in lieu of such real estate. It was out of this, as between W. B. Sanford and T. B. Holland, there was carved the reservation to T. B. Holland for his own use and benefit.

There is discussion by counsel of the question of whether the deed made to the bank by C. B. Holland in 1900 was delivered. Passing by any legal discussion of that question, it may be observed that the deed from C. B. Holland to the bank conveyed a considerable number of tracts of land, other than the interest in the Townsend and Crawford tract. T. B. Holland was the sole devisee under the will of C. B. Holland, and in the years following, individually, conveyed to various persons a number of the tracts described in the deed made by C. B. Holland. W. B. Sanford testified that he knew of the existence of the C. B. Holland deed, from the time it was executed, and it must be presumed that T. B. Holland knew of it; but, when a little more than a year after the signing of the contract of sale of the stock, and when the conditions of that contract and the subject of it, were fresh in their minds, no deed was made either by the bank or by T. B. Holland conveying any part of the Townsend and Crawford tract. The contract recited that it referred to real estate, carried on the books of the bank at the sum of $1738.30, but whether the books contained a description of the several tracts was not shown.

On the theory that the interest in the whole of the Townsend and Crawford tract was taken out of the assets of the bank, but that the reservation made by T. B. Holland referred only to the ninety-four-foot strip, no satisfactory explanation is made why the bank, following the making of the contract, and having first recorded the C. B. Holland deed, did not make a deed to Holland and Sanford, or to plaintiff company, conveying the fifty-foot strip; or, if not that, why such deed, being withheld from the record, T. B. Holland did not convey to plaintiff the one-third interest in the fifty-foot strip. In any event, if plaintiff's claim be founded upon the right of the bank to the fifty-foot strip, before the sale by defendant to Townsend, the fact attaches that seven or eight years before that sale was made, the bank had received the consideration from Sanford and Holland jointly for the severance and appropriation by them of that property; and, out of the property so severed it was agreed between W. B. Sanford and T. B. Holland, as individuals, that a certain interest in the property should be held by T. B. Holland for his own use and benefit. Cases cited (Patterson v. Camden, 25 Mo. 13; Scott v. Scott, 95 Mo. 300) and others, illustrations of the weight to be given to evidence of acts done by parties after the making of a contract, have been considered. Upon that there are in this case inferences both ways. The burden was upon plaintiff to show such a right to the one-third in-

terest in the fifty-foot strip, as that defendant, in good conscience and justice should pay to plaintiff the sum received by her. If the bank pursuant to the contract between Sanford and Holland received the consideration, and ratified the contract they made for themselves, and for the bank, we are unable to say under all the evidence in this case—the unexplainable things present and the many inferences that might be drawn—that the trial court's finding was erroneous, and therefore the judgment is affirmed. *Seddon, C.,* concurs; *Ellison, J.,* not sitting.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.